### 2380.  SIMS *v.* THE STATE.

1. Repeals by implication are not favored, and a later statute will not be construed as repealing a prior act on the same subject, in the absence of express words to that effect, except where the later act is clearly and indubitably contradictory of and repugnant to the former, so that the two acts can not be reconciled.
2. The act of the legislature of 1908 (Acts 1908, p. 1112), making it a misdemeanor to sell what is known as "near beer," without first obtaining a license from the ordinary of the county and the payment of $200 a year for the license, was not repealed by the act of 1909 (Acts of 1909, p. 63), increasing the license to $300 a year and restricting the sale of such beverages to cities containing 2500 inhabitants or more by the last census. The two acts are not repugnant.

Accusation of misdemeanor; from city court of LaGrange— Judge Harwell.  January 4, 1910.

Argued February 21,—Decided July 5, 1910.

*E. T. Moon,* for plaintiff in error.

*Henry Reeves, solicitor,* contra.

HILL, C. J.  Sims was convicted in the city court of LaGrange, on an accusation charging him with a misdemeanor, "for that . . on the 1st day of January, 1910, in the city of West Point, Georgia, a city of less than twenty-five hundred inhabitants according to the last census report of the United States, [he] did then and there unlawfully sell and offer for sale in quantities of less than five gallons, one bottle of Cook's Malt Ale, a "near beer," a beverage made in imitation of and intended as a substitute for beer, ale, and malt liquors, without first having obtained and paying for a license so to do for the year 1910, from the ordinary of Troup county, Ga."  A demurrer was filed to this accusation on the ground that there was no offense charged under the law of this State.

If the allegations of the accusation are sufficient to constitute a misdemeanor under the statutes of this State, the verdict was demanded, as the defendant admitted the act charged against him in the accusation. So the question for decision is the one raised by the demurrer. In support of this demurrer it is said that the act approved September 5, 1908 (Acts 1908, p. 1112), was repealed by necessary implication by the act approved August 16, 1909 (Acts 1909, p. 63). Both acts relate to the manufacture and sale of what is commonly known as "near beer." The act of 1908 (which was passed by the legislature at an extraordinary session), in section 3, makes it a misdemeanor for any firm, person or corporation to "sell or offer for sale in quantities of less than five gallons any such beverages, drinks, or liquors as are referred to in the first section of this act" ("in imitation of or intended as a substitute for beer, ale, wine, whisky, or other alcoholic, spirituous, or malt liquors") without obtaining a license so to do from the ordinary of the county wherein such business is carried on, and paying therefor the sum of $200 for each calendar year or part thereof. The act of 1909 in reference to this subject, as contained in the general tax act for the support of the government passed by the legislature that year, provides, in section 7, subsection 3, that "every person, firm, or corporation who shall sell or offer for sale in quantities of less than five gallons any such beverage, drinks, or liquors referred to in the first paragraph of this section," which describes them in the same language as the act of 1908, shall first obtain a license so to do from the ordinary of the county wherein such business is carried on, and shall pay a license tax of $300 for each calendar year or part thereof, for each place where the business is carried on, and provides that "no ordinary shall issue any license to any person, firm, or corporation to do or carry on such business outside of . . the corporate limits of any incorporated city, town, or village of this State, provided further that no such license shall be issued to any one to do or to carry on such business in any town or city of less than 2500 inhabitants, same to be determined by the last census report of the United States."

There are three modes in which a law or statute can be repealed, viz.: expressly, by necessary implication, or, where the later of two acts covers the subject-matter of the earlier one, not purporting to amend it, and plainly shows that it was intended to be a sub-

stitute for the earlier act, such later act will operate as a repeal of the earlier act, though the two are not necessarily repugnant. 26 Am. & Eng. Enc. Law (2d ed.), 731; *Western & Atlantic R. Co.* v. *Atlanta*, 113 *Ga.* 537, 554 (38 S. E. 996, 54 L. R. A. 294); *Thornton* v. *State, 5 Ga. App.* 397 (63 S. E. 301). The first and second modes of repeal are not applicable to this case. But it is insisted that the third mode is applicable, and that the act of 1909 repeals by necessary implication the act of 1908, in so far as it refers to the manufacture and sale of what is commonly known as "near beer." We do not concur in this view of the law. We think the act of 1908 which makes it a misdemeanor to manufacture or sell "near beer" in this State without first obtaining a license to do so from the ordinary of the county is still of force, and is simply restricted by the act of 1909. The latter act limits the right to manufacture or sell "near beer" only to those cities in the State which contain a population of more than 2500, estimated by the last census. It certainly was not intended by the legislature that the act of 1909 should authorize the manufacture and sale of "near beer" in the State of Georgia in every place except cities of more than 2500 inhabitants. The purpose of the law was manifestly to prohibit, even under license, the sale of "near beer" in towns of less than 2500 inhabitants, or in the country; and if the act of 1909 should be held to repeal the act of 1908 and permit the sale of "near beer" everywhere except in cities of more than 2500 inhabitants, it would be clearly in the teeth of the manifest purpose of the legislature in restricting the right to sell or manufacture, as it did under the act of 1909; and at last the supreme test is, what was the intention of the legislature in passing the subsequent act? If that intention was to restrict, and not to repeal, and the two acts are not in irreconcilable conflict, but can stand together, the court will adopt that construction which is in harmony with the manifest intention of the legislature.

It is well settled, not only by the Supreme Court of this State, but by all the authorities on the subject, both courts and text-writers, that repeals by implication are not favored, and will never be declared by the courts to exist, except where the latter act is clearly and indubitably contradictory of and repugnant to the former act, and the contradiction and repugnancy are such that the two acts can not be reconciled. As well expressed by Mr. Black

in his work on Interpretation of Laws: "A statute will not be construed as repealing prior acts on the same subject (in the absence of express words to that effect) unless there is an irreconcilable repugnancy between them." Black, Int. L. 56, 112. See also *Montgomery* v. *Board of Education, 74 Ga.* 41, where a similar ruling is made and supported by many citations of authorities. Indeed, in the *Montgomery* case, supra, in the body of the opinion, Mr. Justice Hall declares that the doubt expressed by the Supreme Court in *Central Railroad* v. *Hamilton, 71 Ga.* 461, that such a thing as a repeal of a statute by implication did not exist under the constitution of 1877, was not merely a suggestion of the court in that case, but was an opinion expressed upon mature deliberation, after an able argument by learned and able counsel. Perhaps this question of repeal by implication has never been better expressed than in the question from Potter's Dwarris on Statutes, used by the Supreme Court in the *Montgomery* case, supra: "Nor hath a later act of parliament ever been construed to repeal a prior act, unless there be a repugnancy or contrariety in them, or at least some notice taken of the former act, so as to indicate an intention in the lawgiver to repeal it. . . The law does not favor a repeal by implication, unless the repugnance be quite plain. . . Although, then, two acts of parliament are seemingly repugnant, yet if there be no clause of non obstante in the latter, they shall, if possible, have such construction that the latter may not be a repeal of the former by implication."

Applying these general principles, which are well established, to the two acts in question, we think the conclusion is irresistible that the legislature did not intend that the act of 1909 relating to the manufacture and sale of "near beer" should repeal the act of 1908 on the same subject, but only intended by the act of 1909 to restrict the right of sale under license, given by the act of 1908; that the two acts in this respect are not repugnant or irreconcilable, and both can stand together, harmoniously accomplishing the purpose of the legislature in both acts, and especially the purpose of the legislature in the later act. And we conclude that under these two statutes it is now a misdemeanor in this State to sell what is known as "near beer," or a beverage described in these two acts, with or without license, except in cities of 2500 inhabitants or more, to be determined by the last census of the United States. We do not

think that the decisions of the Supreme Court of this State, and of this court, holding in effect that indictments or accusations for selling without license, where a license could not be obtained because the county or State prohibited such sale, are analogous or strictly applicable to the situation presented by these two statutes; for in those decisions the underlying principle was that the right to sell or manufacture was absolutely taken away, and under these two statutes the right to sell or manufacture is not taken away, but is simply restricted to certain cities.

The plaintiff in error attacks the constitutionality of both the act of 1908 and the act of 1909, relating to the sale of "near beer;" but as these exceptions are not made definitely or specifically, or in proper form for certification to the Supreme Court, this court declines to certify them. *Judgment affirmed.*

---

## RULES AMENDED.

RULE 3. *Supreme Court Attorneys, how admitted.* Any member of the bar of the Supreme Court of this State shall be admitted to practice in this court upon submitting satisfactory evidence that he has been admitted to practice in the Supreme Court, and upon his taking the oath prescribed above and signing the Roll Book; whereupon the clerk of this court shall issue to him a license under the seal of this court, upon his paying the fee prescribed in Rule 1 of this court.

RULE 5. *Argument.* Argument is limited in misdemeanors and in cases originating in municipal courts, justice's courts, or county courts, and in cases from city courts where the amount involved does not exceed $500, to thirty minutes on each side, and in all other cases to one hour on each side, unless by special leave an extension of time is granted by the court on specific application made before the argument of the case is begun. Save when section 5581 of the Code applies, only two counsel on each side will be heard. The plaintiff in error opens and concludes; and on motions the movant has the like privilege. The reading from authorities cited on the brief, while not absolutely prohibited, is usually unnecessary and is therefore discouraged.

RULE 29. *Motion for rehearing, when and how made.* No motion for a rehearing will be considered by this court unless the same is filed with its clerk in duplicate (the original and a carbon copy being sufficient) during the term at which the judgment sought to be reviewed was rendered, and before the remittitur in the case to which said motion relates has been forwarded to the clerk of the trial court. A rehearing will be granted, on motion of the losing party, only when it appears that the court has overlooked a material fact in the record, a statute, or a decision which is controlling as authority and which would require a different judgment from that rendered. No motion for a rehearing will be entertained which does not expressly point out what material fact in the record, or controlling statute or decision, has been overlooked by the court. There shall be attached to the motion a certificate of counsel that upon careful examination of the opinion of the court he believes such a fact, statute, or decision, has been overlooked.