### 3714. WHITAKER *v.* THE STATE.

1. The indictment sufficiently charged the offense of cheating and swindling, to withstand general demurrer.
2. The special demurrers, to the effect that the deceitful means and artful practices by which the fraud was consummated are not sufficiently set forth, are not well taken.
3. An indictment for cheating and swindling may be predicated of a false representation relating partly to matters of fact and partly to matters of opinion, where it is alleged that the loss to the prosecutor ensued through his acting upon the false representation as to the fact.
4. To an indictment for cheating and swindling by false representations it is no objection that the false matters alleged were of such a nature that the person defrauded could, by making an independent investigation, have ascertained that they were false, before he acted upon them.
5. An indictment is subject to demurrer if the descriptive terms relating to any material allegation are set forth in an alternative form. The word "or" is generally used as a disjunctive, and to express the notion that the two clauses which it connects are alternative; but this is not always so; it may properly be used to introduce a statement which is an amplification or explanation of a preceding statement. The use of the word in the present indictment was of the latter nature.
6. Where an indictment alleges the making of a false statement, and the statement relates to a number of different facts, the indictment need not allege that loss resulted from each and all of these statements which proved untrue, but if it be alleged that any one of the material false statements resulted in loss, the indictment will be sufficient, so far as this point is concerned.
7. Where no bona fide attempt is made to file a brief of evidence in accordance with the provisions of § 6093 of the Civil Code (1910), but a document is filed, and approved by the trial judge, which includes the documentary and oral evidence without abridgment, in violation of the provisions of that section, the reviewing court will determine only such assignments of error in the motion for a new trial as can be considered without reference to the evidence in the case.

8. The trial judge was duly requested to put his charge in writing. As written out, the charge contained the following statement: At one place there was a note in parenthesis as follows: " (Here the court reads Section 719 of Volume 2 of the Code of 1910, leaving off the words at the top, 'other offenses of like character.') " In another place in the charge the following appears: "Here the court reads the indictment in full, leaving off the names of the grand jurors who returned it, and leaving off the entries on the back of the indictment." In another place in the charge the following notation was made: "Here the court charged paragraph one of defendant's request # 1." In another place: " Here the court charged paragraphs second and fourth of defendant's request No. 2." *Held,* that such a charge was not a compliance with the mandatory requirement of § 1056 of the Penal Code (1910), and the failure of the judge to write out his charge as prescribed by that section demands a new trial.

9. On the trial of an indictment for cheating and swindling, in fraudulently misrepresenting the value, on a specified date, of shares of stock in an alleged corporation, evidence as to the value of such stock both before and after the date of the misrepresentation may be material as illustrating the probable value of the stock on that date.

10. Upon the trial of such an indictment a request to charge that if the jury believed that the defendant in good faith thought the purchase of the stock was a safe investment, and honestly made a mistake as to its value, he could not be convicted, was pertinent and should have been given.

11. In the trial of such a case evidence of purchases of shares of stock in the alleged corporation by persons other than the prosecutor, and the price which such persons paid for the stock, was admissible, as a circumstance tending to illustrate the probable value of the stock, unless it appeared that such other purchases were also made as a result of misrepresentations made by the defendant.

12. When it becomes material to prove that no charter has ever been granted to an alleged banking corporation, this fact must be proved by the testimony of some person who has examined the records in the office of the secretary of State, where, by law, the records of such incorporation are required to be kept.

13. The document purporting to be a certificate of stock in the alleged banking corporation was prima facie not admissible, without proof as to the genuineness of the signatures of the alleged president and secretary of the corporation. If it should in fact appear, from the evidence, that this document was the one delivered by the defendant to the prosecutor as a certificate of stock in the alleged corporation, it would be immaterial whether the signatures of the alleged officers were genuine or not.

14. The answer of the defendant, filed in the receivership proceedings involving the solvency of the alleged banking corporation, was not inadmissible for any reason assigned in the motion for a new trial.

15. The original record of a petition in bankruptcy in the United States court and the original schedules thereto attached, are not admissible in evidence in the trial of an action brought in one of the courts of this

14

State. A duly certified copy of such original records is the highest and best evidence.

16. The foregoing headnotes deal with all the assignments of error which can be considered without reference to the evidence.

DECIDED JUNE 5, 1912.

Indictment for cheating and swindling; from Cobb superior court—Judge Morris. August 19, 1911.

*Gober & Griffin,* for plaintiff in error.

*J. P. Brooke, solicitor-general,* contra.

POTTLE, J. 1. The indictment charged W. P. Whitaker with the offense of cheating and swindling, for that he "did unlawfully then and there falsely and fraudulently represent to one T. L. Underwood that the Bank of Kennesaw was incorporated, and was perfectly solvent, and that the stock in said bank was well worth the sum of one hundred and seven ($107.00) dollars per share of one hundred dollars, and by thus making said false and fraudulent representations and statements did then and there induce the said T. L. Underwood, who relied upon said false and fraudulent representations and statements as true, to buy from him, the said W. P. Whitaker, two shares of said stock, or what purported to be two shares of stock in said Bank of Kennesaw, for which the said T. L. Underwood paid him, the said W. P. Whitaker, the sum of two hundred dollars, when in truth and in fact the stock in said Bank of Kennesaw was not worth anything of value, and was of no value, whereby the said T. L. Underwood was cheated and defrauded out of two hundred dollars, and was deceived, imposed upon, and damaged in said sum by relying upon and believing said false and fraudulent representations and statements, as made by the said W. P. Whitaker as aforesaid, and which said false and fraudulent representations and statements the said W. P. Whitaker knew then and there to be false and untrue." The defendant demurred to the indictment generally and on a number of special grounds. As against general demurrer it was certainly sufficient, under the Penal Code (1910), § 719.

2. Special demurrer to the effect that the indictment does not set forth the deceitful means or artful practices that were used is not well taken.

3. The point made by special demurrer that the alleged false representations were representations, not of facts, but merely of opinions, is not meritorious. The statement that the bank was

incorporated is a statement of fact; the statement that it was perfectly solvent is likewise a statement of fact; and the further statement that the stock in the bank was well worth the sum of $107 per share, though perhaps a statement of an opinion, was properly included in the indictment; for cheating and swindling may be predicated of a representation which in part alleges a fact and in part an opinion.

4. The demurrer on the ground that the indictment showed that the prosecutor could, by the exercise of reasonable diligence, have investigated and discovered that the alleged false statements were not true, if in point of fact they were not true, is not well taken, (1) because the demurrer is speaking; (2) because it does not rob a false statement of its culpability, so far as a prosecution for cheating and swindling is concerned, for it to appear that the prosecutor acted upon it instead of making an investigation elsewhere for the purpose of discovering the truth. *Crawford* v. *State,* 117 *Ga.* 247; same case, 4 *Ga. App.* 789.

5. The allegation in the indictment that the accused induced Underwood to buy from him "two shares of said stock, or what purported to be two shares of stock in said Bank of Kennesaw," is demurred to on the ground that it does not definitely allege whether it was two shares, or what purported to be two shares, in the Bank of Kennesaw that Underwood was induced to buy. The rule is well settled in this State that an indictment must not state any essential of the offense in the alternative; and since the word "or" is usually a disjunctive conjunction, indicating an alternative between two different things, it is generally an improper word to be used to connect the affirmative allegations of an indictment. For instance, it is bad to charge that the defendant shot "with a gun or a pistol." But this is not the only use of the word "or." It is sometimes used to introduce a reiteration of the same idea, and to express it in a somewhat different way. Thus, for an indictment to charge that liquor was sold "to a minor or to a person under twenty-one years" is not to charge the crime in the alternative; for the manifest meaning of the language in that case is simply to make the last clause explanatory of the first. So, in this case, the allegation that the accused sold to Underwood two shares of stock, or what purported to be two shares of stock, in the bank in question means that he sold him that which, if the

bank had been incorporated, would have been shares of stock, but which, since the bank was not incorporated, is to be more properly called "what purported to be" two shares of stock. In other words, the expression "shares of stock," as applied to an unincorporated bank, would not, if left to stand alone, be an accurate expression, though it is a common expression used by the people to express a notion, even as applied to an unincorporated bank; and the pleader in this case, by the use of the additional expression, "or what purported to be two shares of stock," merely amplified his previous allegation and made it more certain. Hence, the indictment is not subject to the demurrer aimed against it on this ground.

6. The demurrer makes the further point that it is not shown that any loss resulted to the prosecutor because it turned out that the bank was not incorporated. It may be, and probably is, true that if the sole false statement alleged was that the bank was incorporated, the allegation as to how the prosecutor's loss came about would not be sufficient to support the indictment, but it must be kept in mind that this is not the sole false statement alleged. The whole of the false statement as charged against the accused is that he represented that the Bank of Kennesaw was incorporated, that it was perfectly solvent, and that its stock was worth more than par. Each of these statements was false. The loss occurred because the stock was of no value. This being a natural and proximate result of the bank's insolvency (that is, from the falsity of the statement that the bank was solvent), there is a sufficient proximity of connection between the falsity of the statement and the loss that came to the prosecutor through the stock's being worthless. We are not now discussing the question as to the admissibility of evidence under this indictment, or as to the sufficiency of the evidence to support the indictment. What we are here attempting to show is that there is direct connection between one material portion of the false statement and the loss to the prosecutor, according to the allegations of the indictment. It is not necessary, in an indictment for cheating and swindling, that the loss be shown to have come about as the direct and natural result of the falsity of each or all of the statements made in the representations on which the indictment is based; it is proper to set out in the indictment the entire statement, and to show that, by reason of any portion of this statement's proving false, loss re-

sulted in the manner set out in the indictment. To illustrate, suppose in this case the indictment had alleged the same false statement and had charged that the loss came about by reason of the fact that the prosecutor had been exposed to liability and consequent loss as a partner in the unincorporated bank, when he could not have been so exposed if the bank had been chartered. In the case just supposed, the indictment would have been good on the theory that the loss alleged was a natural result flowing from the falsity of the statement that the bank was incorporated, and certainly the indictment would sustain a conviction if these two allegations were proved, notwithstanding it turned out that at the time the representation was made, stock in it was of the market value asserted by the accused. We conclude that the demurrer to the indictment was properly overruled.

7. A judgment of affirmance was entered by the Court of Appeals in this case, and subsequently a motion for rehearing, filed by the plaintiff in error, was granted. The court had previously reached the conclusion that the document appearing in the record as a brief of the evidence was not a compliance with § 6093 of the Civil Code (1910), and that for this reason the court was without power or authority to pass upon any ground of the motion for new trial. An order was entered requiring the case to be reargued, in order that this court might re-examine the question whether it had authority to consider any of the assignments of error contained in the motion for new trial, in view of the fact that no legal brief of evidence was incorporated in the record and tendered to the judge in connection with the motion for new trial. In other words, the court decided to hear reargument upon the question as to whether the motion for new trial stood upon the same footing as if no brief of evidence at all had been filed. The court in its order declined expressly to reopen the question as to whether the brief of evidence was legally prepared. After reargument the Court of Appeals certified to the Supreme Court for instruction the following questions: "When no bona fide attempt is made to file a brief of evidence in accordance with the provisions of Civil Code (1910), § 6093, but a document is filed, and approved by the trial judge, which includes the oral and documentary evidence without abridgment, in violation of the provisions of such section, should the motion for new trial stand upon the same foot-

ing as though no effort had been made to comply with the provisions of such section of the code? Can there be a valid motion for a new trial in a case where no attempt has been made to file a brief of evidence, and the document filed as a brief of evidence is not in compliance with the provisions of Civil Code (1910), § 6093? Where no legal brief of evidence is filed, but a document such as is described in the preceding questions is tendered as a brief of evidence, and is approved by the trial judge, and the motion for a new trial is thereupon overruled and the case is brought to the Court of Appeals upon writ of error complaining of such judgment, should this court deal with the case as though no valid motion for new trial had been filed by the movant, and should the Court of Appeals in such a case reverse the judgment overruling the motion for new trial, if it discovers charges of the court which appear to be abstractly erroneous, or, in a criminal case, not applicable to the charge made in the indictment, or that there have been errors prima facie committed in the admission or rejection of testimony, and these errors are complained of in the motion for new trial? Assuming that a plaintiff in error must show both error and injury, when there is no legal brief of evidence filed with the motion for new trial, but only a document which fails to comply with the provisions of Civil Code (1910), § 6093, should this court look to such a document for any purpose; and can it be said in any case, without an examination of the evidence, that an instruction of the trial judge, abstractly erroneous, is so hurtful to the plaintiff in error as to require a reversal of the judgment?"

The Supreme Court has delivered its instructions (138 *Ga.* 139), in answer to the questions propounded, as follows: The first question was answered in the negative, the court holding that a motion for a new trial, accompanied by a paper purporting to be a brief of the evidence filed and approved by the trial judge, but in the preparation of which it appears that there has been no bona fide effort to comply with the provisions of the Civil Code, § 6093, does not stand upon the same footing as a paper presented as a motion for a new trial unaccompanied by anything purporting to be a brief of the evidence introduced on the trial. The second question was answered in the affirmative, the court holding that there may be a valid motion for new trial in a case where a paper purporting to be a brief of the evidence is filed as such in con-

nection with the motion, for new trial, but not made up in accord-
ance with the Civil Code, § 6093, so far as to authorize the appellate
court to consider and decide any point raised in the motion, not
dependent for determination upon the evidence. The first inquiry
embodied in the third question was answered in the negative, and
the second inquiry embodied in the third question was answered
in the affirmative, the court holding that it is the duty of the re-
viewing court to reverse the judgment overruling the motion for
new trial, if it discovers charges of the court which appear to be
abstractly erroneous, or, in a criminal case, if there have been
errors prima facie committed in the admission or rejection of
testimony, and these errors are complained of in the motion for
new trial. The first inquiry propounded in the fourth question
was answered in the negative, and an affirmative answer given to
the second inquiry made in the fourth question. Under these in-
structions from the Supreme Court it becomes the duty of the
Court of Appeals to examine the motion for new trial in the pres-
ent case, for the purpose of determining whether there are any as-
signments of error made in the motion which can be considered
without reference to the evidence in the case. The foregoing head-
notes from 1 to 6 inclusive, and the corresponding divisions of the
opinion, were prepared by Judge Powell and adopted by this court
as its opinion. We now reaffirm the rulings thus made and the
opinion of the court as thus delivered. We proceed, therefore, to
a consideration of the motion for a new trial.

8. The trial judge was duly requested to put his charge in writ-
ing. As written out, the charge contained the following statement:
At one place there was a note in parenthesis as follows: " (Here the
court reads Section 719 of Volume 2 of the Code of 1910, leaving
off the words at the top, 'other offenses of like character.') ". In
another place appeared the following: "Here the court reads
the indictment in full, leaving off the names of the grand jurors
who returned it, and leaving off the entries on the back of the in-
dictment." In another place, the following: "Here the court
charged paragraph one of defendant's request # 1." In another
place, the following appeared: "Here the court charged para-
graphs second and fourth of defendant's request No. 2." The
code requires that when counsel for either party request it before
argument begins, the trial judges shall "write out their charges

and read them to the jury, and it shall be error to give any other or additional charge than that so written and read." Penal Code (1910),. § 1056. It has been held by the Supreme Court that "it is no failure to comply with a request to charge the jury in writing for the judge, instead of copying into his charge sections of the code which he submits to the jury, to read these sections verbatim from the code itself, noting accurately in his written charge the sections so read." *Burns* v. *State,* 89 *Ga.* 527. This itself, as was said by this court in *Hays* v. *State,* 10 *Ga. App.* 823 (74 S. E. 314), was a departure from the letter of the code, and both this court and the Supreme Court have several times held that it was the duty of the trial judge to obey both the letter and the spirit of the statute which declares that he must, when a timely request is made, write out in full the charge to the jury. See *Walker* v. *State,* 8 *Ga. App.* 214. But, under the ruling of the Supreme Court in the *Burns* case, supra, it was not error for the judge to read § 719 of the code without copying the section into his charge, he having noted, in the charge as filed, the number of the section and the fact that it was read. It may be that upon the principle of that decision it was also not error to fail to copy the indictment in the charge, since the indictment is a part of the record in the case, and there can be no dispute as to its contents. The purpose of this section of the code is to prevent controversies between judge and counsel in reference to what instructions were given the jury, and certainly it is true, and this court holds broadly, that as to every matter about which there can be a controversy between court and counsel the judge must write out his instructions to the jury, when duly requested so to do by counsel for either party. We think, therefore, that it was error for the judge to fail to write out in full in his charge the portions of the requests of the defendant which he gave to the jury. Requests are not part of the record in the case. They are not filed as such. They are frequently lost or destroyed after the charge is delivered. Generally they are returned to counsel with a notation, either of "given" or "refused," as the case may be. It is, therefore, not a compliance with the mandatory provisions of the section of the code to simply state in the charge, as was done in the present instance, that the court read, at a certain point in the charge, indicated by the notation, certain paragraphs of the requests presented by the defendant and identi-

fied by numbers. It can readily be seen how a controversy might arise between court and counsel as to what the request contained if it should be lost or destroyed, and we are unwilling to approve the practice of simply noting on the charge that a certain request was given; and we are clear that the failure to copy the requests in the charge was a violation of both the letter and the spirit of the statute. The error thus committed demands a new trial.

9. Several assignments of error in the motion for new trial involve the question as to whether it was proper to permit proof of the value of the shares of stock which the defendant was alleged to have sold to the prosecutor, and of other stock in the alleged corporation, at a time subsequent to the date upon which the sale was alleged to have taken place. As a separate and independent fact, the evidence of the value of the stock at other dates was not material, but it was material as illustrating the probable value of the stock on the date on which the sale was alleged to have been made. For instance, if it could have been shown that a week or ten days after the sale the stock was absolutely worthless, that no changes took place in the meantime in the condition of the alleged corporation, and that nothing occurred to depress the price of the stock within that period, the value of the stock at that time would be a very strong circumstance, and almost conclusive, upon the question as to what its value was at the date of the sale. The court should, however, in admitting the evidence and in instructing the jury, have confined proof of the value of the stock upon other dates solely to the purpose of illustrating the value of the stock at the date the sale was alleged to have taken place.

10. In another ground of the motion for new trial complaint is made of the refusal of the court to give in charge a written request substantially that if the jury should believe that the defendant in good faith thought the purchase of the stock was a safe investment, and the jury believed that he entertained that opinion and honestly made a mistake as to its value, he could not be convicted. The defendant was indicted and convicted for cheating and swindling, in that he sold to the prosecutor a certain number of shares of stock in an alleged corporation which had not in fact been incorporated at the time of the sale of the stock; that the stock was worthless; that the defendant represented that the company

had .been incorporated, and represented that the stock was well worth par or above; that both of these representations were false and fraudulent and the defendant knew they were false at the time he made them. To support the allegations of the indictment it was necessary for the State to show that the company had not been incorporated; that the stock was worthless, or worth greatly less than par; that the defendant, in order to induce the prosecutor to purchase, falsely represented to him that the company had been incorporated and that the stock was worth par; that these representations were false at the time he made them, and they were made for the purpose of inducing the sale. Value is largely a question of opinion. It may be illustrated in various ways, but, at last, what a given commodity is worth depends upon the opinion which people who profess to be acquainted with its value entertain on the subject. Men are frequently honestly mistaken as to the value of property, and particularly would this be true as to the value of shares of stock in a corporation and similar property. Value of such stock depends upon a variety of things. If the defendant honestly believed that the stock was worth par when he sold it to the prosecutor, then the representations made by him as to its value could not be said to have been fraudulently made, and this necessary ingredient in the offense charged would not have been made out. Therefore the principle incorporated in the request to charge should have been given.

11. Complaint is made in other grounds of the motion that the court refused to permit the defendant to show, for the purpose of illustrating the value of the stock, that a number of other people had bought stock in the company at or about the same time the sale was made to the prosecutor, and paid the same or a larger price than that paid by the prosecutor. Of course, if all of these other sales were made by the defendant, and upon representations similar to those made to the prosecutor, and the representations were acted on by the purchasers, the evidence would not be admissible for the purpose of illustrating the value of the stock. But if other purchases were made by a number of people and upon their own independent judgment, after an investigation as to its value, the fact that they paid a sum equal to or greater than that paid by the prosecutor would be a very strong circumstance to show that the purchasers were of the opinion that the stock was worth what

they paid for it, and could be properly proved by the defendant for the purpose of rebutting the inference that, in making the representations which he is alleged to have made to the prosecutor as to the value of the stock, he was guilty of a fraudulent intent. The fact that a man may have paid a given sum for an article would, of course, not necessarily show what the article was worth, but it would tend to illustrate his opinion as to its value, and where a number of purchases of the same kind of property were made for the same price and at or about the same time, while this would not necessarily prove that the property was worth the sum paid for it, it would show that in the opinion of the purchasers the property was of that value. We think, therefore, that such evidence ought to have been admitted and considered by the jury, as a circumstance which might indicate that the defendant made the representations without fraudulent intent.

12. Another ground complains that the court allowed one of the bank's officers to testify that there was no evidence in any of the bank records of any charter having been granted to the bank. The proper place to look to ascertain if a bank has been chartered is the office of the secretary of State. The fact that there is no record in the bank of the incorporation would not necessarily show that no charter had in fact been granted. Upon another trial the proper way to prove this fact is to produce the testimony of some one who has examined the records in the office of the secretary of State that no such charter has been granted.

13. The court allowed in evidence a paper which purported to be a certificate of stock in the Bank of Kennesaw, executed by John W. Bennett as president, and the defendant as cashier, under the seal of the bank. Counsel for the accused objected to the admission of this document, on the ground that its execution had not been proved, in that neither of the signatures was shown to be genuine. This objection, from the recitals in the motion for new trial, appears to have been well taken, and we can not look to the evidence for the purpose of ascertaining whether error was committed in overruling the objection. If it in fact appeared from the evidence that this was the document sold to the prosecutor by the defendant as a share of the stock in the bank, then the paper would have been admissible, without reference to whether the signatures of the persons signing as president and cashier were gen-

uine or not. But, so far as appears from the motion for new trial, the paper was offered generally, without any evidence explaining that it was the paper which had been delivered to the prosecutor by the defendant; and this being so, the general rule that the execution of such a document must be proved before it becomes admissible in evidence applies.

14. Record of a receivership proceeding was admitted in evidence for the purpose of showing that in an answer claimed to have been filed by the defendant, he had admitted that the bank was not incorporated, and that it was insolvent when the petition was filed. The answer purported to be signed in behalf of the defendant by attorneys of record, and there is also attached to the answer an affidavit verifying the truth of the contents of the answer, purporting to be signed by the defendant in the presence of a notary public. There was objection to the admission of this answer, on the ground that it had not been shown that it had been in fact made as an answer of the defendant and by his authority. This objection was not well founded, and the ruling of the court was proper in allowing the introduction of that portion of the answer which admitted that the bank had not been incorporated, but was a partnership, and also admitted that the bank was insolvent.

15. Over objection of the defendant, the court admitted in evidence an original record from the United States court of a petition in bankruptcy which had been filed by the defendant. The evidence was objected to, both upon the ground that a certified copy, and not the original, was the proper evidence of the bankruptcy proceedings, and that the evidence was irrelevant and immaterial. Without an examination of the evidence, we can not tell whether the bankruptcy proceeding was material or not, but it is clear that the original record was not admissible. The original record was a paper belonging to the office of the United States court, and counsel for the State had no right to withdraw it from that office for the purpose of offering it in evidence in the case. The original was not admissible; and if the evidence was material, a certified copy should have been offered. *McLanahan* v. *Blackwell,* 119 *Ga.* 64.

16. The foregoing deals with all the assignments of error in the motion for new trial which can be considered without refer-

ence to the evidence.   As to such other assignments we express
no opinion.   On account, however, of the errors above pointed out,
a new trial is demanded.                        *Judgment reversed.*