### 6026. SMITH *v.* THE STATE.

1. Under the provisions of the game-law (Acts of 1911, pp. 137-146), it is unlawful for any person to hunt, without first obtaining a license, except upon his own land or in his own militia district; and when lawfully hunting in his own militia district he can not lawfully follow hounds in pursuit of foxes, deer, or any other animal, to and upon another's lands in another militia district, without such a license, even though he has permission from the owner to hunt thereon.

2. The act of 1912, amending the game-law of 1911, by the terms of section 3 of the amending law effectually repeals the exception provided for ·in section 18 of the act of 1911, which allowed persons lawfully hunting to follow hounds in pursuit of foxes, deer, and other animals

not protected by that act, upon lands of another without the permission of the owner of such lands; and the law as now amended prohibits any and all persons, with or without a license, from hunting or fishing upon lands other than their own without permission of the landowner.

DECIDED DECEMBER 24, 1914.

Accusation of misdemeanor; from city court of Elberton—Judge Grogan. October 21, 1914.

*T. J. Brown*, for plaintiff in error.

*Boozer Payne, solicitor*, contra.

WADE, J. An accusation was preferred against Harper Smith, charging him, in two counts, with violation of the game law (Acts 1911, pp. 137-146) : (1) "For that the said Harper Smith, in the said county [of Elbert], on the fourth day of August, 1914, did with force and arms unlawfully hunt on and upon the lands of S. H. Fortson in Wyche district, said county, without having first obtained the permission of said S. H. Fortson, the owner of said lands, so to do; contrary to the laws of said State," etc. (2) "For that the said Harper Smith, in said county, on the fourth day of August, 1914, did with force and arms unlawfully hunt in said district of Wyche, without first having obtained a license so to do, as required by act of General Assembly, 1911, p. 137, the said Harper Smith not being a resident of said district of Wyche; contrary to the laws of said State," etc. The case comes to this court on an agreed statement of facts, which is as follows: "On the fourth day of August, 1914, Harper Smith, who lives in Eliam district of Elbert county, having struck the trail of a fox in his home district, on lands on which he had permission to hunt, followed the hounds across his home-district line, into an adjoining district, namely Wyche district, in the same county. It is admitted that he was hunting a fox with dogs. He had no license." The defendant was convicted under the second count of the accusation.

The determination of this case involves the construction of section 18 of the aforesaid act of 1911, which reads as follows: "Any person who shall hunt, without first obtaining a license, except upon his own land, or in his own militia district, or who lends or transfers his license to another, or who shall hunt upon the lands of another without first having obtained his consent to do so, except persons following hounds in pursuit of foxes or deer, or any other animal not mentioned in this act, shall be guilty of a misdemeanor, and, upon conviction, punished as prescribed in section 12 of this

act." The question raised under the first count of the indictment is precisely ruled upon in the case of *Blassingame* v. *State,* 11 *Ga. App.* 809 (76 S. E. 392), where one was hunting rabbits with hounds upon the lands of another person mentioned in the accusation, without the permission of the owner. The contention in that case was that rabbits were not such game as are protected by the terms of the game law, and that it was lawful to hunt or follow hounds in hunting rabbits, without a license and without permission of the landowner. It was held in that case that "no kind or character of game, whether designated by the act or not, can be hunted without complying with the requirements as to license, and without first obtaining the permission of the landowner." It was further ruled that the only exceptions to the above statement of the law under consideration are those provided for by section 18 of the act: "First, where the hunter is hunting game upon his own land or in his own militia. district. In either event he is not required to have a license. Of course, he can not hunt the game specified in the act except in what is known as the open season, as fixed by the act, on his own lands or elsewhere. The other exception is: 'Persons following hounds in pursuit of foxes or deer, or any other animal not mentioned in this act;' and this simply means that where a hunter is lawfully hunting upon the lands of another with permission, and, in so hunting, the hounds find, upon the land which he has permission to hunt, foxes, deer, or any other animal not mentioned in this act, and the game is pursued by the hounds, he may follow the hounds in pursuit on to the land upon which he has no permission to hunt."

Section 18 of the game-law of 1911, as will be observed by a careful scrutiny thereof, declares several distinct acts to be criminal. It declares: (1) "Any person who shall hunt, without first obtaining a license, except upon his own land, *or in his own militia district*" [italics ours], is guilty of a misdemeanor. (2) Any person "who lends or transfers his license to another" is guilty of a misdemeanor. (3) Any person "who shall hunt upon the lands of another without first having obtained his consent to do so, except persons following hounds in pursuit of foxes or deer, or any other animal not mentioned in this act, shall be guilty of a misdemeanor." Each of these offenses is separately set out, and the description of each is distinctly marked off or separated from the

other by the disjunctive conjunction "or," which would, according to the usual rules of grammatical construction, make any exception or modification appearing in the description of any of the three offenses created by the said section 18 apply *solely* and exclusively to the offense described in that division or portion of the sentence so marked off and separated by "or." This word, while sometimes construed in a conjunctive sense, is ordinarily used and understood in a disjunctive sense. *Clay* v. *Central R. Co.,* 84 *Ga.* 345 (10 S. E. 967); *Whitaker* v. *State,* 11 *Ga. App.* 211 (75 S. E. 258). As stated in the Century Dictionary (1st ed.), "or" is "a disjunctive conjunction co-ordinating two or more words or clauses, each one of which in turn is regarded as excluding consideration of the other or others." Hence, in this section, the clause describing the third offense included therein as follows: "or who shall hunt upon the lands of another without first having obtained his consent to do so, except persons following hounds in pursuit of foxes or deer," etc., is, by the very use of the conjunction "or," separated, with its modification, from the rest of the sentence; so that the provision "except persons following hounds in pursuit of foxes or deer," etc., was thus limited, and applied only, even before the passage of the act of 1912 (Acts 1912, pp. 113-119), to the case of one who followed hounds upon the lands of another without first having obtained his consent, and the exception did not extend to the first clause of section 18, which declares that any person who shall hunt without first obtaining a license, except upon his own land or in his own militia district, is guilty of a misdemeanor.

The first division of section 18 provides that one may not lawfully hunt, without a license, anywhere within the confines of the State of Georgia, except in the two specific instances named, to wit: first, where he hunts *upon his own lands,* or, second, when he hunts *in his own militia district.* He may live in one portion of the State, and may nevertheless hunt without a license on his own lands not in the county of his residence and in another section of the State; or he may hunt upon the lands of another person within the limits of the militia district within which he resides (by first obtaining the permission of such person), without any license. Nowhere else, according to the plain language of the act of 1911, may any person hunt, without first obtaining a license. So it will be seen

that under the construction we give to section 18 of the act of 1911, no one could enjoy the exception allowed or provided for in the third division of that section, and follow hounds in pursuit of foxes or deer or any other animal not mentioned in that act on to the lands of another, not in the militia district of the hunter's residence, without first obtaining a license, even though he had the permission of the owner of such lands to hunt thereon. The act of 1911 was intended not only to protect certain varieties of game therein mentioned, but also to create revenue for the State; and the activities of those who elect not to contribute to the revenue of the State by obtaining a license to hunt and paying therefor are limited strictly to their own lands, or to lands in their own militia districts, when they have permission from the owners thereof to hunt.

Section 7 of the act of 1911, page 141, provided that "no person shall hunt or fish upon the lands of another, with or without a license, without first having obtained permission from such landowner." This section, however, was a mere prohibition without a penalty; and section 18, naming a penalty for three different offenses enumerated, *including that of hunting without permission upon the lands of another,* provided the only penalty for any of the acts declared unlawful in section 7. The act of 1912 (Acts 1912, pp. 113-119) amends the act of 1911 in several important particulars, and section 3 of the amending act makes a sweeping amendment to the entire act of 1911, by attaching a penalty for the violation of section 7, and making section 7 read as follows: "No person shall hunt or fish upon the lands of another with or without a license, without first having obtained permission from such landowner. Any person violating this section is hereby declared to be guilty of a misdemeanor, and shall be punished as provided in section 12 of this act." Section 7, as amended, being inconsistent with that provision of the third division of section 18, declaring that no person shall hunt upon the lands of another without having obtained his consent to do so, *except* persons following hounds in pursuit of foxes or deer, or any other animal not mentioned in this act, and being a later expression of the legislative will, and there being also an express recital in the amending act of 1912 that all laws in conflict therewith are thereby repealed, we must conclude that the legislature intended to repeal the exception referred to. So that, as the law

now stands, one may not now lawfully follow hounds in pursuit of foxes, deer, or other animals not mentioned in the act of 1911, over, upon, or across the lands of another, without first obtaining the permission of the landowner.

Section 7 of the act of 1911 had originally no force and effect as a penal statute, since no vindicatory consequence could follow its violation by any person; but section 3 of the act of 1912 (Acts 1912, p. 113) gave vitality and force to section 7, by providing a punishment for its violation, and thereby converted a mere prohibition into an enforceable penal law. This section as amended is broader and more comprehensive than that part of section 18 referring to hunting upon the lands of another without permission, in that it contains no exception whatever, but provides in sweeping terms that "no person shall hunt or fish upon the lands of another with or without a license, without first having obtained permission from such landowner. Any person violating this section is hereby declared to be guilty of a misdemeanor, and shall be punished as prescribed in section 12 of this act." The amendment of 1912 to the game-law of 1911 concludes with the usual words: "Sec. 7. Be it further enacted by the authority aforesaid, *that all laws and parts of laws in conflict with this act are hereby repealed.*" In construing any statute or an amendment to any existing statute, where the meaning of the words employed is plain and unambiguous, we are required by law to apply the ordinary signification to the words used, and have no authority to read into a positive and clear enactment any modification of meaning that will vary the usual and natural meaning of the words employed.

It may be stated, without citation of authorities to sustain so obvious a conclusion, that the amendment of certain sections in an act, without more, is equivalent in effect to a declaration that the remaining sections shall continue of force unless they are absolutely inconsistent with the amending act. It is almost too trite for statement, except as a basis for a further statement resting thereon, to say that it is a recognized and settled principle, in construing different statutes, that the latest expression of the legislative will on a particular subject is the law, and "in case of conflicting provisions in the same statute, or in different statutes, the last enacted in point of time prevails." 36 Cyc. 1130. It is also well settled that

"A particular expression in one part of a statute, not so large and extensive in its import as other expressions in the same statute, will yield to the larger and more extensive expressions, where the latter embody the real intent of the legislature." 36 Cyc. 1131; *Torrance* v. *McDougald,* 12 *Ga.* 526 (3, 4). The section last amended prevails over one in conflict therewith, even though the amended section precedes the other in order of arrangement. People v. Dobbins, 73 Cal. 257 (14 Pac. 860).

Here there is a direct conflict between section 7 as amended and that part of section 18 relating to the same subject-matter; and since section 7 of the act of 1911 only had the breath of life breathed into it as a penal statute when a penalty was prescribed for the violation thereof by the amendment of 1912, this later and more comprehensive expression of the legislative will annihilated the exception provided for in section 18. Had there been in the amendment of 1912 no express words repealing all conflicting laws, section 7 of the act of 1911 as amended by section 3 of the act of 1912 is so much more comprehensive than, and so clearly repugnant to, that part of section 18 of the act of 1911 which relates to the same subject-matter, and section 7 as amended is so manifestly intended to cover the whole subject-matter of hunting upon lands of another without permission, that, under the settled rules of construction, it must be held to operate as a substitute for that portion of section 18 which relates to this subject-matter. See *Verdery* v. *Walton,* 137 *Ga.* 213, 216 (73 S. E. 390); *Youmans* v. *State,* 7 *Ga. App.* 101 (66 S. E. 383); *Sims* v. *State,* 7 *Ga. App.* 852 (68 S. E. 493); *Gray* v. *McLendon,* 134 *Ga.* 224 (67 S. E. 859).

It appears that section 3 of the amending act of 1912 must have been overlooked by this court at the time the decision in the *Blassingame* case was rendered, when the court said (11 *Ga. App.* 809, 811, 76 S. E. 392), that "where a hunter is lawfully hunting upon the lands of another with permission, and, in so hunting, the hounds find, upon the land upon which he has permission to hunt, foxes, deer, or any other animal not mentioned in this act, and the game is pursued by the hounds, he may follow the hounds in pursuit on to lands upon which he has no permission to hunt." This expression was, after all, mere obiter, since the facts in that case were that the defendant was hunting rabbits with hounds upon the lands

of another without the permission of the owner, but it did *not* appear that he had pursued the rabbits from lands where he was lawfully hunting; and the exception in section 18 of the act of 1911, dispensing with the necessity for permission when following foxes, deer, rabbits, etc., from lands where one was lawfully hunting to lands where he had no permission to hunt, consequently did not apply.

We hold, therefore, that section 7 of the act of 1911, as amended by section 3 of the act of 1912, supersedes or repeals all parts of the act of 1911 in conflict therewith, including the exception provided for in the last division of section 18 as aforesaid. In the *Robinson* case, 12 *Ga. App.* 683 (78 S. E. 53), the effect of section 7 of the act of 1911 appears to have been recognized clearly by the court, though no express reference is there made to the amendment of 1912, providing the sanction for that section, or, in other words, providing for its enforcement.

If a person who starts game or strikes its trail upon his own lands, or upon lands of another on which he has permission to hunt, could lawfully follow the game to and upon lands of another beyond the confines of his own militia district and into any portion of the same county even, without first obtaining a license, this would authorize and allow absolute strangers, who might be vagrants or criminals of some other type, on the pretext of following game started or first discovered in some remote section of a county, to recklessly overrun lands of another, originate destructive forest fires, and commit various depredations on crops or other property which the owner probably would be helpless to prevent and could not perhaps redress, because the perpetrators would be unknown and undiscoverable to him. It therefore seems to us that it was a wise provision of the original act of 1911 that limited the scene of operations of an unlicensed hunter to the militia district of his own residence, except where he was the owner of lands located elsewhere than in the district of his residence and where his identity would be well known to those residing near such lands, or except where he took out a license authorizing him to hunt, describing his personal appearance and sufficiently identifying him so that he might be held responsible for any intentional or accidental wrongs resulting from following game

on to the lands of another, and so some slight protection at least might be thus offered to owners of lands who had granted no permission to hunters, but upon whose lands rabbits, foxes, deer, etc., might have come from another militia district, fleeing from hounds and hunters of that district. But now, since the passage of the amendment of 1912, the degree of protection afforded landowners has been increased; and unless the hunter has permission from the owner of the lands, he may not hunt or fish upon any lands other than his own, or even pursue a fox from his own or other lands where he has been lawfully hunting, on to lands of another, without permission from the owner, under penalty of the law.

The conviction of the defendant under the second count of the accusation was authorized by the agreed facts; and the exceptions to the charge of the court, contained in the amendment to the motion for a new trial, are without merit.

*Judgment affirmed.*

BROYLES, J., concurring specially. I concur in the affirmance of the judgment in this case, but I can not agree with the majority opinion of this court that it was the intention of the legislature, by the passage of the amending act of 1912, to repeal the exception provided for in section 18 of the act of 1911, which allowed persons lawfully hunting to follow hounds in pursuit of foxes, deer, or other animals not protected by that act, upon lands of another without the permission of the owner of such lands.