A03A0051. HARKINS et al. v. PROGRESSIVE GULF INSURANCE COMPANY et al.
(586 SE2d 1)

MIKELL, Judge.

On June 3, 1999, Colton Wesley Knapp was a passenger on a motor bike operated by Matthew Harkins. Knapp died after the motor bike collided with an automobile operated by Dean E. Basher. Knapp's parents sued Matthew Harkins's parents, Larry M. Harkins and Barbara Harkins, for the wrongful death of their son.

Progressive Insurance Company ("Progressive"), Larry Harkins's automobile insurer, filed a declaratory judgment action against the Knapps and the Harkinses, as well as Great Northern Insurance Company ("Great Northern"), Federal Insurance Company ("Federal"), and USAA Casualty Insurance Company ("USAA"). Great Northern was Larry Harkins's homeowner's insurer. Federal was Larry Harkins's excess liability or "umbrella" insurer. USAA was Barbara Harkins's automobile insurer.

Progressive, Great Northern, Federal, and USAA filed motions for summary judgment asking the trial court to declare that their respective insurance policies did not cover claims arising out of the June 3, 1999, collision. The trial court granted summary judgment to the four insurers. The Harkinses appeal, and we affirm.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the

party opposing the motion, warrant judgment as a matter of law.[1] A defendant need not produce any evidence to obtain summary judgment, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim.[2] Our review is de novo.[3]

Although we will be reviewing four different insurance contracts, the standard for reviewing each policy is the same.

> In construing an insurance policy, the test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean. The policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney. Where a provision in a policy is susceptible to two or more constructions, the courts will adopt that construction which is most favorable to the insured.[4]

Nevertheless, "[i]f the terms of the contract are plain and unambiguous, the contract must be enforced as written."[5]

1. *The Progressive Policy.* Larry Harkins is the named insured in the automobile insurance policy issued by Progressive. The policy's "covered vehicle" is a 1999 Porsche 911 Carrera. The Harkinses argue that: (a) Larry Harkins is an "insured person" under the policy with respect to the collision between Matthew Harkins and Basher, and (b) the collision involved a "vehicle" for purposes of the policy, and so is a covered accident. As discussed below, we reject both arguments.

The policy provides that, subject to certain liability limits, Progressive

> will pay damages for bodily injury and property damage for which an insured person becomes legally responsible because of an accident arising out of the ownership, maintenance, or use of a vehicle.

For purposes of the Progressive policy, a "vehicle" is defined as "a land motor vehicle: a. of the private passenger, pickup body, or sedan delivery type; b. designed for operation principally upon public roads;

---

[1] OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[2] Id.

[3] *Supchak v. Pruitt*, 232 Ga. App. 680, 682 (1) (503 SE2d 581) (1998).

[4] (Footnote omitted.) *Ga. Farm &c. Ins. Co. v. Huncke*, 240 Ga. App. 580-581 (524 SE2d 302) (1999).

[5] (Citation omitted.) *Ryan v. State Farm &c. Ins. Co.*, 261 Ga. 869, 872 (413 SE2d 705) (1992).

c. with at least (4) wheels; and d. with a gross vehicle weight of 10,000 pounds or less."

An "insured person" is:

 1. you or a relative with respect to an accident arising out of the ownership, maintenance, or use of a covered vehicle;

 2. any person, with respect to an accident arising out of that person's use of a covered vehicle with the express or implied permission of you or a relative;

 3. a relative with respect to an accident arising out of the maintenance or use of a non-owned vehicle with the express or implied permission of the owner of the vehicle;

 4. you with respect to an accident arising out of the maintenance or use of any vehicle with the express or implied permission of the owner of the vehicle.[6]

(a) The Harkinses argue that the phrase commencing with "arising out of" in part one of the definition of insured person modifies only "relatives" and not "you" because the definition begins "you *or* a relative," and that "or" is used in the disjunctive.[7] Under their interpretation, an insured person would include "you . . . with respect to an accident."

"In construing an insurance contract, a court must consider it as a whole, give effect to each provision, and interpret each provision to harmonize with each other."[8] Part four of the definition of "insured person" includes "you" with respect to accidents arising out of the use of any vehicles with the express permission of the owner. This provision would be superfluous[9] if, as the Harkinses contend, the contract insures "you" for all accidents. In order for part four of the definition of "insured person" to harmonize with the full definition of "insured person," then both "you" and "relatives" in part one of the definition must be modified by the phrase "arising out of the ownership, maintenance, or use of a covered vehicle." It follows that an insured would not include the Harkinses or Matthew Harkins for purposes of the collision between Matthew Harkins and Basher because Matthew Harkins was not operating a covered vehicle or a nonowned vehicle with the express or implied consent of the owner.

---

 [6] Sections 5 and 6 of the definition are inapplicable.

 [7] See *Smith v. State*, 15 Ga. App. 536, 539 (83 SE 886) (1914).

 [8] (Footnote omitted.) *York Ins. Co. v. Williams Seafood of Albany*, 273 Ga. 710, 712 (1) (544 SE2d 156) (2001).

 [9] See *id.* at 712 (2).

(b) The Harkinses concede that the motor bike driven by Matthew Harkins is not a "vehicle" for purposes of the Progressive policy. But they contend that (i) the automobile driven by Basher is a "vehicle" under the policy, and (ii) because the collision arose out of the use of a "vehicle," Progressive must provide coverage for the Knapps' damage claims. We disagree because, as we have determined, neither Larry Harkins, Barbara Harkins, nor Matthew Harkins was an insured person under the Progressive policy with respect to the collision. Accordingly, the trial court correctly granted summary judgment to Progressive.

2. *The Great Northern Policy.* Larry Harkins is the named insured under the homeowner's insurance policy issued by Great Northern. Under the policy, Great Northern agrees to "cover damages a covered person is legally obligated to pay for personal injury . . . caused by an occurrence." A covered person includes "you or a family member." The policy excludes coverage for "any damages arising out of the ownership, maintenance, [or] use . . . of any motorized land vehicle." Accordingly, we conclude that the policy does not cover the Knapps' claims.

The Harkinses argue that the Knapps' negligent supervision claim is not excluded by the policy's motorized land vehicle exclusion. They rely on *Guaranty Nat. Ins. Co. v. Brock*,[10] in which we determined that a motor vehicle exclusion in an insurance contract providing protection for a school principal in his professional capacity did not exclude a claim based on negligent hiring of a bus driver, even though the underlying occurrence was a bus accident and the policy excluded claims arising out of the use of any vehicle.[11]

In interpreting an insurance contract, we look at the nature of the policy as well as its language.[12]

> In *Brock*, the reason that the issue was coverage, instead of exclusion, lies in the nature of the policy and the language of the exclusion to protect the individual from liability in the conduct of his professional school duties; if the exclusion in *Brock* had applied, then the administrator would have had no professional coverage at all under the normal performance and circumstances of his job as supervisor of transportation, which would contravene the very purpose of the professional liability insurance policy.[13]

---

[10] 222 Ga. App. 294 (474 SE2d 46) (1996).

[11] Id. at 296-297 (2).

[12] See *Grain Dealers Mut. Ins. Co. v. Pat's Rentals*, 228 Ga. App. 854, 855 (a) (492 SE2d 702) (1997), rev'd on other grounds, 269 Ga. 691 (505 SE2d 729) (1998).

[13] (Emphasis omitted.) *Grain Dealers Mut. Ins. Co.*, supra, 228 Ga. App. at 855 (a).

In this case, we are not concerned with a professional liability policy, but personal liability protection under a homeowner's insurance policy. It is helpful to examine what is exempted from the exclusion in ascertaining what the parties intended the insurance to cover. For instance, the exclusion for motorized land vehicles does not include motorized land vehicles "in dead storage at your *residence*" or "used solely on and to service a *residence* premises."[14] It would not, as in *Brock,* subvert the underlying purpose of this policy to interpret the exclusion to apply.

The Knapps' claims are based on personal injury to their son; these injuries arose from a collision between motorized land vehicles; and the policy excludes damages arising from the use of motorized land vehicles. It follows that the Knapps' claims are excluded from coverage under the policy. Accordingly, the trial court did not err in granting summary judgment to Great Northern.

3. *The Federal Policy.* Federal issued an excess liability policy to Larry Harkins. The policy covers "damages a covered person is legally obligated to pay for personal injury" in excess of damages covered by underlying insurance, or from the first dollar of damage in certain instances. The policy excludes "any damages arising out of the . . . use . . . of any owned motorcycle." As in the case of the Great Northern policy, we conclude that the exclusion applies and that coverage is not available.

The Harkinses' argument that the motor bike is not a motorcycle for purposes of the policy fails. In response to interrogatories, the Harkinses stated that "the vehicle in question is described as a 1999 Honda XR80R, variously described as a motor bike, an off-road motorcycle, and off-highway motorcycle."[15] The Harkinses point out numerous Georgia statutes requiring that a "motorcycle" have safety equipment such as a headlight,[16] taillights,[17] a brake light,[18] and a turn signal,[19] none of which was present on the motor bike. But we see no reason, within the context of the policy, to consider such safety features to be the defining features of a "motorcycle." And unlike cases such as *Farlow v. Vigilant Ins. Co.,*[20] there is no policy provision which would require differentiation between a recreational vehicle and nonrecreational vehicle. The motor bike had two wheels and a motor, and, based on a photograph of the model of the motor bike in

---

[14] (Emphasis supplied.)
[15] See also *Addison v. Southern Guaranty Ins. Co.*, 155 Ga. App. 536, 537 (271 SE2d 674) (1980) (trail bike is a motorcycle).
[16] OCGA § 40-8-22 (b).
[17] OCGA §§ 40-1-1 (29), (33); 40-8-23 (a).
[18] OCGA § 40-8-25.
[19] OCGA § 40-8-25 (c).
[20] 165 Ga. App. 696, 698 (2) (302 SE2d 578) (1983).

the record, looked like a motorcycle. We conclude that the motor bike was a motorcycle for purposes of the policy. It follows that the Knapps' claims arose out of the use of a motorcycle and are excluded. The trial court did not err in granting summary judgment to Federal.

4. *The USAA Policy.* USAA was Barbara Harkins's automobile insurer. A 1998 Jeep is the "covered auto" listed on the policy. Under its policy, USAA agreed to "pay damages for [bodily injury] or [property damage] for which any covered person becomes legally responsible because of an auto accident." But the policy provides no benefits to any covered person for bodily injury "[s]ustained while occupying any motorized vehicle having less than four wheels, unless the vehicle is your covered auto." Colton Knapp's bodily injuries fall squarely within this exclusion, and so no benefits are available under the policy, irrespective of whether the Harkinses are covered persons for purposes of the collision. The trial court correctly granted summary judgment to USAA.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED JUNE 17, 2003 —
RECONSIDERATION DENIED JULY 30, 2003 — 

*Finch, McCranie, Brown, Hendrix & Sullivan, Richard W. Hendrix, John W. Winborne III*, for appellants.

*Shur, McDuffie, Williams & Morgan, Brett F. Shur, Michael L. Morgan, Cruser & Mitchell, Joseph R. Cruser, William T. Mitchell, Nola D. Jackson, Barrickman, Allred & Young, William B. Barrickman, Swift, Currie, McGhee & Hiers, Stephen L. Cotter, Sharon L. Neal*, for appellees.