No. 24.—EDWARD GIRARDEY and another, plaintiffs in error, *vs.* JNO. DOUGHERTY, defendant in error.

[1.] By the Act of December 6th, 1855, a security upon an administration bond may petition for and have relief from the Ordinary, by counter-security or otherwise, as matter of right. And this Act is not repealed by the Act of December 15th, 1810.

[2.] Such relief cannot extend to the revocation of the administrator's letters, unless under the provisions of the Act of 1810, proof of mismanagement is made; and notice has been given to the administrator in terms of that Act. In this way the two Acts may subsist together.

Motion on appeal, in Superior Court of Richmond County. Decision by Judge HOLT, February Term, 1855.

John Dougherty, the surety on the administration bond of Edwardy Girardey and Wm. J. Dougherty, as administrators of M. Frederick, deceased, filed his petition praying for relief, under the Act of 1805, as *matter of right*, without showing any reason or ground of apprehension. On appeal, Judge HOLT decided that such relief might be granted; and this decision is the error assigned.

G. J. & W. SCHLEY; A. H. H. Dawson, for plaintiffs in error.

A. J. & T. W. MILLER, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

The defendant in error, as security upon the administration bond of the plaintiffs in error, applied to the Ordinary of Richmond County for relief, stating that he conceived himself in danger of suffering loss by reason of his suretyship, and praying for relief.

An appeal, by consent, was taken from the Court of Ordinary to the Superior Court; and that Court decided that the security was entitled to the relief he sought, as matter of right, although the administrators were not mismanaging the estate of their intestate. To this decision exception has been taken.

We have two Acts on this subject: one approved on the 6th day of December, 1805, and the other, on the 15th day of December, 1810. The former provides, that "whenever securities for executors, administrators or guardians conceive themselves in danger of suffering thereby, and petition the Court of Ordinary for relief, the said Court shall cause the executor, administrator or guardian to be summoned to ap-

'pear before them at the next sitting thereof, and shall make such order and give such relief in the case, by counter-security or otherwise, as to the said Court shall seem just and ·equitable." The Act of 1810 declares, that "The said Court ·shall have power and authority, upon complaint made and cause shown by any security of any administrator or guardian, that his principal is mismanaging his estate, upon ·upon which he is the administrator or guardian, to pass an order requiring such administrator or guardian to show cause, if any they have, at the next term, why such security should not be discharged from his suretyship, and such administrator ·or guardian compelled to give new security, or their administration or guardianship revoked, as to the said Court shall seem expedient," &c. The Act then provides for the making of such new administrator or guardian a party to all suits which may have been brought against the removed trustee.

[1.] The proceeding in this case, confessedly, has been instituted under and by virtue of the provisions in the first of ·these Acts contained. And the Court below put his decision ·upon the ground that it was authorized by said Act.

The concluding words of the Act of 1805 do, at first, appear justly to admit of the criticism made upon them by the ·Counsel for the plaintiff in error, viz: that the language, and "shall give such relief in the case, by counter security or otherwise, *as to the said Court shall seem just and equitable,*" was intended to clothe the Court with a discretion by which he could refuse to grant *any order* for relief, unless it seemed ·to him just and equitable, that an order for relief should be ·granted. If, however, we reflect a moment, we will see that this language is reconcilable with the intention, to require that ·relief of some sort should be granted as matter of right; but that ·this relief should be such only " as to the Court might seem just and equitable." And so far as we are informed, such has ·been the uniform construction of this Statute.

This construction, perhaps, has been influenced by that ·which has been given to an older and similar Statute of S. ·Carolina, as appears from *DeLane's case,* cited in the argu-

ment before us, from 2 *Brev. R.* 167.   It is true that there
is a slight difference between the two Acts.   But it is very
slight—not enough to make a difference upon principle.   Un-
der these circumstances, we will defer to and adopt a con-
struction of this Act of 1805, which has been so long prevail-
ing in our State.

[2.] But it has been contended, that though this be the
correct construction of this Statute, it is, in effect, repealed
by the Act of 1810; that this latter Act is repugnant to it;
and therefore, repeals it.

When such a point is made, the first duty of a Court is to
ascertain whether or not the two Acts are necessarily repug-
nant—whether or not they can be so construed as to stand
together; for " a subsequent Act, which can be reconciled
with a former Act, shall not be a repeal of it, though there
be negative words." (*Dwarris on S.* 674.)   And though
" two Acts of Parliament are seemingly repugnant, yet, if
there be no clause of *non obstante* in the latter, they shall, if
possible, have such construction that the latter may not be a
repeal of the former by implication." (*Dyer,* 347.   *Dwarr.*
674.)

So, too, it has been held, that " where the provisions of
two Statutes are so far inconsistent that both cannot be en-
forced, the latter must prevail; but if, by any fair course of
reasoning, the two can be reconciled, both shall stand."
*Ludlow vs. Johnston,* (3 *Hamm.* 553.)

" A repeal, by implication, is not favored; on the contrary,
Courts are bound to uphold the prior law, if the two Acts
may well subsist together." (*Bomer vs. Lease,* 5 *Hill,* (*N.
Y.*) 226.   *Bruce vs. Schuyler,* 4 *Gill.* 221.)

Now the terms of the Act of 1805, which we have under
consideration, are not precise and definite as to the character
and extent of. the relief to be granted "by counter-security
or otherwise."   And we can well see that very grave doubts
may have been entertained as to the power of the Court, un-
der this grant, to revoke the letters of administration, if ad-
ditional security were not given; or, as to the propriety of

doing this, unless there was proof of mal-administration; and thus, embarrassment may have arisen in carrying the provisions of the Act into effect. The Act of 1810 may have been intended to settle this question, and remove this embarrassment, by giving express authority to revoke the letters of administration, if the security were not given. But it was quite right, before the Court was allowed to proceed to this extremity, that it should be required to have proof before it of mismanagement on the part of the administrator. And hence, the provision to this effect, in that Act. Thus, the Act may be considered as repealing so much of the Act of 1805, as might have been construed to have authorized the Court to remove an administrator upon the petition of the security, as matter of right to the latter, and without proof of mismanagement by the trustee, but leaving the other relief which the Act of 1805 contemplates, still to be granted under that Act.

In this way, the two Acts may subsist together. Under the Act of 1805, the security may have relief as matter of right; but that relief may stop short of his removal; or, indeed, of additional security, as the Act authorizes the Court to give relief by counter-security or *otherwise.*

If, however, the security wishes to have the administrator removed, and thus terminate, effectually and forever, the relation between them, he can proceed under the Act of 1810 —prove mismanagement and have the administration revoked.

The two Acts thus harmonize, and make useful features of the same system.

Let the judgment be affirmed.