BANKS, adm'r, *v.* GEORGIA RAILROAD & BKG. CO.

1. A chartered railroad company which, under legislative authority, leased its tracks and franchises to another such company, is not liable for the homicide of an employee of the latter, caused by the negligence of a coemployee.
2. Even if the lessor company be liable for such a homicide when caused by a defect in the track of the leased line, the allegations of the petition in the present case failed to show that the track was defective.

Argued January 3,—Decided January 26, 1901.

Action for damages. Before Judge Reid. City court of Atlanta. April 7, 1900.

*Arnold & Arnold,* for plaintiff. *Joseph B. & Bryan Cumming* and *Sanders McDaniel,* for defendant.

FISH, J. This was an action proceeding in the name of James Banks, as the administrator of the estate of Fannie R. Thurmond deceased, against the Georgia Railroad and Banking Company, for the tortious homicide of Earl Thurmond, the husband of plaintiff's

intestate. The petition alleged that the defendant had leased its track and franchise to the Louisville and Nashville Railroad Company, and that there was no legislative authority exempting the defendant from responsibility for the acts of the lessee company in operating the road; that at the time of the homicide Earl Thurmond was in the employment of and working for the lessee company as a car-coupler on the line it had leased from the defendant, and that his death resulted from the negligent putting in motion of an engine and cars of the lessee by its engineer, thereby causing the deceased to get his foot caught in a frog in the track, and to be run over and killed; that the frog "was very dangerous, and was negligently allowed to remain unblocked;" and that "not only did the deceased not know of the defective and dangerous condition of said track and frog, but deceased had been in the yard only for a short time, had not come in contact with this frog, in the exercise of ordinary care it was not his duty to see or know the condition of this frog, and on the occasion of his death it was dark and the frog was not visible," and "had it not been for the presence of said defective frog the homicide would not have occurred;" and that the deceased was wholly without fault. His age, life expectancy, and earning capacity when killed were also alleged. The defendant demurred generally to the petition, and "because the engineer, whose alleged negligence was the proximate cause of the accident, was not an employee of this defendant, but both he and the deceased were employees of another corporation; and further, because the alleged dangerous and negligent condition of the right of way was not the proximate cause of the injury, and was moreover known to the deceased." The charter of the Georgia Railroad and Banking Company, of which the judge took judicial cognizance, authorizes it to lease its line of road, but contains nothing exempting it from liability for the acts of the lessee in operating the franchise. The demurrer was sustained generally by the court, and the plaintiff excepted. The question is, therefore, presented for determination, whether a chartered railroad company, after leasing its road and franchise by legislative authority to another company, is liable for the tortious homicide of an employee of the lessee company while the two employees are engaged in operating a train of the lessee's cars on the leased line; there being no statutory exemption absolving the lessor company from such liability.

There is great contrariety of judicial opinion in respect to the responsibility to the public of a lessor railroad company for the acts of the lessee's servants in operating the franchise, where the lease is authorized by statute, but without a provision for the lessor's exemption from liability.   We apprehend, however, that no case can be found where it is held, in the absence of a statute creating the liability, that a proprietary railroad company which has, by legislative authority, leased its road and franchise, is responsible for a tort to an employee of the lessee resulting from the negligence of a coemployee.   In *Macon and Augusta Railroad Company* v. *Mayes*, 49 *Ga.* 355, it was held: "Where a railroad company permits other companies or persons to exercise the franchise of running cars drawn by steam over its road, the company owning the road, and to which the law has entrusted the franchise, is liable for any injury done, as though the company owning the road were itself running the cars." In that case the company owning the road was held liable for a tort to an employee of the company using the franchise, occasioned by the negligence of his coemployee; but there was no legislative authority for the latter company to use the franchise; indeed there was no lease at all.   And therein lies the marked distinction between that case and the one in hand.   Here the Georgia Railroad and Banking Company had express authority in its charter to lease its road.   The case of *Jones* v. *Georgia Southern Railroad Company*, 66 *Ga.* 558, is exactly in line with the case under consideration.   There the Georgia Southern Railroad Company, in accordance with the power given in its charter, as well as by the decretal order of a district court of the United States, leased all its property and franchises to Walker and Tucker.   Jones, a track-hand, sued Tucker and the Georgia Southern Railroad Company, as partners running the road, for an injury resulting, as he alleged, from the negligence of a coemployee.   Tucker was not served, and the case proceeded against the railroad company.   Upon the trial it appeared that Jones was an employee of Walker and Tucker, who were operating the road under the lease.   A nonsuit was granted, and this court, in affirming the judgment of the trial court, Mr. Justice Crawford delivering the opinion, said: "On the judgment of nonsuit, to which exception was also taken, we can see no error.   The plaintiff Jones was the track-hand and servant of Walker and Tucker, lessees, and not of the Georgia Southern Railroad Company,

then the only defendant before the court in this case." The head-notes in the case do not refer to this point, but they were prepared by the reporter and not by the court. In such a case the opinion on the points ruled is authority, and not the mere synopsis thereof subsequently made by the reporter. See also *Georgia Railroad and Banking Company* v. *Strauss*, 110 *Ga.* 189.

The only other case involving the right of an employee of the company using the road to hold the proprietary railroad company liable for an injury caused by the negligence of a coemployee, which has come to this court, is that of *Killian* v. *Augusta and Knoxville Railroad Company*, 79 *Ga.* 234. Killian was an employee of the Port Royal and Augusta Railway Company, on its train which was temporarily running over the line of road of the Augusta and Knoxville Railroad Company by its consent. There was no lease. The car upon which Killian was riding was derailed, and he was killed. In a suit for his homicide, brought by his widow against the Augusta and Knoxville Railroad Company, the owner of the track, it was held that the only duty or obligation the defendant company was under as to Killian was to furnish a safe track for the running of the train upon which he was riding. The trial court charged the principle announced in the *Mayes* case, supra, but this court thought it inapplicable, and undertook to distinguish the cases. See 79 *Ga.* 244. Counsel for plaintiff in error cite the case of *Singleton* v. *Southwestern Railroad Company*, 70 *Ga.* 467. It appears in that case that the Southwestern Railroad Company had, by legislative authority, leased its roads and franchises to the Central Railroad and Banking Company, and that it was operating the leased lines in the name of the lessor company with its consent; that Singleton was a passenger on the leased road, with a ticket purporting to have been issued by the lessor company, sold to him by the agent of the lessee company; and that while such a passenger Singleton received personal injuries by reason of the negligence of the lessee's employee in putting him off the train. There was no legislative exemption absolving the Southwestern Railroad Company from liability for the negligent acts of the employees of the lessee company. This court held that, notwithstanding there was legislative authority for the lease, the proprietary company was, under such circumstances, liable to Singleton for the injuries resulting to him from the torts of the lessee's employees. In the synopsis

of the points decided it was said: "A railroad company which has leased its road, cars, and engines, and allows the lessee company to operate the same in the name of the lessor company, is liable to third persons or the public for the carelessness and 'negligence of the lessee company, in the absence of statutory provision to the contrary. . . The original obligation of a railroad company to the public can not be discharged, except by legislative enactment consenting to and authorizing. the lease, with an exemption granted to the lessor company from liability. Legislative consent to the lease is not alone sufficient. There must be a release from the obligations of the company to the public." It will be seen that the question dealt with there is essentially different from that involved in the case under consideration. There the point was, whether a lease authorized by charter, but without legislative absolution to the lessor company, released it from the performance of its duties and obligations to the public. The duty of safely transporting Singleton was a duty owing to the public as such, which the court said the lessor company could be relieved of only by legislative exemption. In the opinion Mr. Justice Crawford, who also rendered the opinion in the *Jones* case, recognizes the distinction between the rights of a passenger and those of an employee of the lessee as against the lessor company. The learned Justice says: "But it is said that the case of *Jones vs. The Georgia Southern Railroad et al.*, 66 *Ga.* 558, rules this case in favor of the defendant in error. We do not so understand it. In that case there were two questions made and decided. One was, that the leaving a copy declaration and process with a depot agent was not sufficient service on an individual lessee of a railroad, even though the lease under which he operated the road may have been made by authority of law. The other, that Jones, the plaintiff, being the track-hand and servant of the individual lessees, and not of the Georgia Southern Railroad, the latter would not be bound to answer in damages for injuries alleged to have been caused by a coemployee, likewise in the service of the said individual lessees; and especially when the said Jones did not show himself free from fault. The case at bar is widely different, in that it arose, not between the lessee company and one of its servants, but between itself, as operated by the lessee company in its name, and the public, in the exercise of one of its most important franchises — the transportation of passengers."

The conclusion we have reached is that the present case under its facts is not controlled by the rulings made in the case of *Macon and Augusta Railroad Company* v. *Mayes*, and *Singleton* v. *Southwestern Railroad Company*, supra, but is governed by the decision in *Jones* v. *Georgia Southern Railroad Company*, supra.

2. Granting the Georgia Railroad and Banking Company would be liable for the homicide of Thurmond, if it resulted from a defective track, the petition in this case fails to allege any defective track other than an unblocked frog. The mere fact that a frog was unblocked does not show the track to be defective. The court can not know whether it is the general custom or not to block frogs. It may be that all the frogs on this line of road were unblocked when Thurmond was employed and when he was killed, and they may have been dangerous, but if so, the danger was one of the risks of the business which was assumed by the employees. See *Central of Ga. Ry. Co.* v. *Edwards*, 111 *Ga.* 528.

There being no error in sustaining the demurrer to the petition, the judgment is　　　　　*Affirmed. All the Justices concurring.*