23753. CENTRAL OF GEORGIA RAILWAY COMPANY *et al.* *v.* LEONARD.

691

DECIDED JUNE 11, 1934. REHEARING DENIED SEPTEMBER 27, 1934.

*Leonard Farkas, Walter H. Burt,* for plaintiff in error.

*M. B. Peacock,* contra.

GUERRY, J. Only the first, second, and seventh headnotes need elaboration. Where a member of the general public sustains an injury by the negligent running of railway cars of a lessee railroad company at a public crossing, may he maintain an action against the lessee and the lessor company, where the lease is recorded, un-

der the act of 1889 (Civil Code, §§ 2598, 2599), requiring such leases to be recorded and prescribing certain penalties for failure to record? The plaintiff was alleged to have been injured at a public street-crossing in the City of Albany by the negligence of the Central of Georgia Railway Company in operating a freight-train over the crossing, which company leased and operated such train over the tracks of the Southwestern Railroad Company. This lease was recorded under the act of 1899 (Civil Code, §§ 2598, 2599) which as codified reads as follows: "§ 2598. All railroad companies in this State, which have already leased or which may hereafter lease their property or line of road to another railroad company or to a private person, shall have the contract of lease or other contract of like nature, evidencing the change of control and possession of such property or line of road, recorded in the clerk's office of the superior court in each county through which said line of road may run. § 2599. A failure or refusal to comply with the preceding section will authorize any person having a right of action against said railroad or the lessee thereof, including any employee of the same, to file and prosecute said action against said railroad company in all respects, as if the same were the proper party defendant, and any plea or other defense attempting to shift liability to such lessee or denying control or possession of such property or line of road filed either to the suit of a person belonging to the general public or to a suit filed by an employee as aforesaid, shall not avail to protect any such railroad against liability that fails or refuses to record as provided in the preceding section." The plaintiff filed suit against both railroad companies for damages. The Southwestern Railroad Company filed a demurrer to the petition, contending that the petition disclosed that the lease between it and the Central of Georgia Railway Company was recorded in the county of the alleged injury, and that therefore, under the provisions of the above-quoted act, it was not liable for the negligence of the Central of Georgia Railway Company.

Prior to the passage of the above act there was adopted, in the Code of 1895, § 1864 (§ 2228 of the Code of 1910), a provision which reads as follows: "A corporation charged with a duty to the public can not, by sale or otherwise, dispose of its property or franchises so as to relieve itself from liability for acts done or omitted, without legislative sanction expressly exempting it from

liability." In the case of *Macon & Augusta R. Co.* v. *Mayes,* 49 *Ga.* 355 (15 Am. R. 678), Moses Mayes sued the Macon and Augusta Railroad Co. for damages, "alleged to have been sustained by the plaintiff on account of the negligent conduct of the defendant in the running of its cars." From the report of that case it appears that Hull & Company had contracted with the defendant to construct its road, and the evidence was in conflict as to whether they had entirely completed and formally turned over the road to the defendant. However, it appears that DeBogan was the engineer of an engine, employed by Hull & Company. The plaintiff was, on the day of the accident, ordered by one Printup, superintendent of the construction company, to serve as fireman on DeBogan's engine in transporting the president of the railroad company over the road. The train upon which plaintiff was riding, in proceeding over the road, had a collision with a train of the Georgia Railroad which was proceeding over the road of the defendant by its permission. In upholding the verdict for the plaintiff the court said: "Where a railroad company permits other companies or persons to exercise the franchise of running cars drawn by steam over its road, the *company owning the road,* and to which the *law has entrusted the franchise, is liable for any injury done,* as though the company owning the road were itself running the cars." (Italics ours.) A railroad thus can not, without special authority of statute, alienate its franchise or property acquired under the right of eminent domain, or essential to its performance of its public duty, whether by sale, mortgage, or lease, so as to relieve itself from responsibility for damages incurred by the use of its franchise. In *Jones* v. *Georgia Southern R.,* 66 *Ga.* 558, the plaintiff brought suit against Walker and Tucker and the Georgia Southern Railroad jointly for an injury done to him by a coemployee. It appeared that Walker and Tucker leased from the Georgia Southern Railroad its tracks, and was operating under the lease at the time of the injury to Jones. Jones was nonsuited, and the court, in upholding the nonsuit, said: "On the judgment of nonsuit, to which exception was also taken, we can see no error. The plaintiff, Jones, was the trackhand and servant of Walker and Tucker, lessees, and not of the Georgia Southern Railroad Company, then the only defendant before the court in this case." This ruling was cited as authority for the ruling made in *Banks* v. *Georgia R. &c. Co.,* 112 *Ga.* 655 (37

S. E. 992), which was as follows: "A chartered railroad company which, under legislative authority, leased its tracks and franchises to another such company, is not liable for the homicide of an employee of the latter, caused by the negligence of a coemployee." The court said, in the *Banks* case: "In *Macon and Augusta Railroad Co.* v. *Mayes,* 49 *Ga.* 355, it was held [quoting that portion of the opinion already quoted in this opinion]. In that case the company owning the road was held liable for a tort to an employee of the company using the franchise, occasioned by the negligence of his coemployee; but there was no legislative authority for the latter company to use the franchise; indeed there was no lease at all. And therein lies the marked distinction between that case and the one in hand. Here the Georgia Railroad and Banking Company had express authority in its charter to lease its road. The case of *Jones* v. *Georgia Southern R. Co.,* 66 *Ga.* 558, is exactly in line with the case under consideration. There the Georgia Southern Railroad Company, in accordance with the power given in its charter, as well as by the decretal order of the district court of the United States, leased all its property and franchises to Walker and Tucker. Jones, a track-hand, sued Tucker and the Georgia Southern Railroad Company, as partners running the road, for an injury resulting, as he alleged, from the negligence of a coemployee. Tucker was not served, and the case proceeded against the railroad company. Upon the trial it appeared that Jones was an employee of Walker and Tucker, who were operating the road under the lease. [The court then quotes from that part of the opinion already quoted above.]" In *Singleton* v. *Southwestern R. Co.,* 70 *Ga.* 464, the plaintiff alleged that he purchased a ticket from the defendant to ride upon its road from Howard to Geneva and return, and that by the carelessness of the defendant and the negligence of its agents he was injured and damaged in a named sum. At the trial the defendant filed a special plea alleging that, before and at the time of the accident, the road and cars had been leased by the Southwestern Railroad Company to the Central Railroad and Banking Company of Georgia, and that the same were at the time of the injury being operated by the latter. The jury found in favor of the plaintiff and the trial court granted a new trial "upon the ground that the jury found contrary to the evidence and the charge on the special plea." The Supreme Court reversed the action of

the trial judge, and held: "A railroad company which has leased its road, cars, and engines, and allows the lessee company to operate the same in the name of the lessor company, is liable to *third persons* or the *public* for the carelessness and the negligence of the lessee company *in the absence of a statutory provision to the contrary*. . . A corporation has only the power conferred upon it by its charter. Its grants of powers and exemptions are always to be strictly construed, and its obligations are to be strictly performed, whether they may be due to the state or to individuals. A railroad corporation can not, without special authority of statute, alienate its franchise or property acquired under the right of eminent domain, or essential to the performance of its duty to the public, whether by sale, mortgage or lease. . . The original obligation of a railroad company to the public can not be discharged, except by legislative enactment consenting to and authorizing the lease, with an exemption granted to the lessor company from liability. Legislative consent to the lease is not alone sufficient. There must be a release from the obligations of the company to the public." (Italics ours.)

In *Killian* v. *Augusta & Knoxville R. Co.,* 79 *Ga.* 234 (4 S. E. 165, 11 Am. St. R. 410), it was held: "Where a train loaded with wood was transported over one railroad to a city, and at the instance of the shipper, permission was obtained from the superintendent of the road for the train to proceed over the track of two other roads to a third, and over it to the point of destination, the train being manned by employees of the first road, and a person, by direction of the superintendent of that road, accompanied the train for the purpose of seeing that it was unloaded promptly and returned to the road to which it belonged, and where an arrangement was made with the superintendent of the third road for the train to proceed over its track, and he directed an employee to go upon the engine and act as pilot and inform the engineer of the curves and 'tight places' in the track, the only duty or obligation owed by the third railroad company to the employees of the first company upon such train was to have a reasonably safe track over which the cars were to be transported." This decision was made November 22, 1887. The next case upon this subject is that of *Chattanooga, Rome & Columbus R. Co.* v. *Liddell,* 85 *Ga.* 482 (11 S. E. 853, 2 Am. St. R. 169), where a railroad company which had

made a contract with a construction company that the latter should operate the railroad so as to be completed and equipped, for two years, and receive the earnings, was held liable to a passenger for injuries occurring during that period by the negligence of the construction company. In *Central R. &c. Co.* v. *Passmore,* 90 *Ga.* 203 (15 S. E. 760), it was held that a railroad company that by contract or otherwise permits another railroad company to use a portion of its tracks is liable to one of its servants injured by the negligence of such other company. In *Central R. &c. Co.* v. *Phinazee,* 93 *Ga.* 488 (21 S. E. 66), the court follows the decisions in *Macon & Augusta R. Co.* v. *Mayes, Singleton* v. *Southwestern R. Co.,* and *Chattanooga, Rome and Columbus R. Co.* v. *Liddell,* supra, in holding that a chartered railroad company permitting another company to run trains over its tracks is liable in damages to a passenger of the latter company, occasioned by the negligence of the latter company, the court saying, in forceful language: "There is no less scepticism in law than in theology. This court is called upon again and again for a fresh revelation of some legal truth which has already been revealed. After the cases of [citing the above cases] it would seem that there could be no reasonable doubt of the liability of a chartered railroad company permitting another company to run trains over its railway, and thus to use its franchise, to respond for any damage occasioned by negligence, whether its own or that of its lessee or licensee." In *Green* v. *Coast Line R. Co.,* 97 *Ga.* 15 (24 S. E. 814, 33 L. R. A. 806, 54 Am. St. R. 379), it was said: "It is by reason of this firm adhesion of duty imposed to franchise granted that an incorporated railroad company can not lease its line of railway and permit it to be operated by the lessee without being liable for negligent torts committed by the lessee, to the same extent as if they were committed by itself. . . And this rigid rule of liability, which is directly the opposite of that which prevails touching lessees where no charter franchise of a quasi-public nature are involved, is not relaxed in favor of a company having express permission from the legislature to make the lease, unless there be also an express exemption or grant of absolution from liability."

In *Hawkins* v. *Central of Ga. Ry. Co.,* 119 *Ga.* 159 (46 S. E. 82), it was said: "There is conflict in the authorities as to how far a lessor corporation, charged with a public duty, is liable for

the acts of its lessee. But whatever the rule elsewhere, unless there is a legislative exemption, our statute (Civil Code, § 1864) preserved to the *public* the liability of the vendor or lessor company, preventing it from escaping responsibility by a transfer of its property or franchises to a non-resident or insolvent, or even to a resident and solvent grantee." In *Ga. R. &c. Co.* v. *Tice,* 124 *Ga.* 459 (52 S. E. 916, 4 Ann. Cas. 200), it was said: "The operation of a railroad by a lessee, in the absence of express statutory authority exempting the lessor from liability for the acts of the lessee, does not change the relation of the lessor company to the public; and the servants of the lessee company are, as to acts for which the lessor company may be held liable, in legal contemplation as much the servants of the lessor as of the lessee." In *Ga. R. &c. Co.* v. *Haas,* 127 *Ga.* 187 (56 S. E. 313, 119 Am. St. R. 327, 9 Ann. Cas. 677), it was ruled that a railroad company that leases its road to another is liable for a conversion by the latter company of property delivered to it for shipment, unless expressly exempted by law. In the recent case of *Bennett* v. *Western & Atlantic R.,* 42 *Ga. App.* 821 (157 S. E. 365), it was said: "The franchise of a chartered railroad corporation under which it has authority to maintain and operate a railroad can not be alienated or delegated so as to absolve the railroad company from its obligations and duties to the public without legislative consent relieving the railroad from such obligations. The mere legislative approval of and consent to a sublease or contract made by a chartered railroad company, by which the railroad company leases the right to the use of its tracks to another railroad company in the absence of any legislative authority exempting the lessor company from any liability to the public in the exercise of its franchise to operate the railroad and run trains along its tracks, is insufficient to relieve that company from any liability to the *public* arising from the use of its track by the lessee company pursuant to the agreement." (Italics ours.) Along the line of the authorities already cited and quoted from are *Seaboard Air-Line Ry.* v. *Randolph,* 126 *Ga.* 238, 243 (55 S. E. 47); *Gregory* v. *Georgia Granite R. Co.,* 132 *Ga.* 587 (64 S. E. 686); *Atkinson* v. *Dismuke,* 11 *Ga. App.* 521 (75 S. E. 835); *Western Union Tel. Co.* v. *Spencer,* 24 *Ga. App.* 471 (101 S. E. 198); *A. & W. P. R. Co.* v. *Reese,* 28 *Ga. App.* 275 (110 S. E. 750); *Heins* v. *S., F. & W. Ry. Co.,* 114 *Ga.* 678 (40 S. E. 710); *Payne* v. *Lyon,* 154 *Ga.* 501.

See also *Atlantic Coast Line R. Co.* v. *McElmurray,* 14 *Ga. App.* 196 (80 S. E. 680).

From the principles announced in the cases above cited, the right of the plaintiff in the case at bar, being a member of the *general public* and not an employee of the lessee railroad, to hold the lessor railroad liable for the negligence of the lessee seems clear. There is no legislative absolution from liability granted to the lessor that has been brought to our attention. The act of 1899 quoted in the first part of this opinion is one extending rather than limiting the liability of the lessor company. The act was enacted after the decision of the Supreme Court in the *Killian* case, 79 *Ga.* 234 (supra), with reference to the liability of the lessor company for injuries to servants of the lessee injured by a coemployee (see also *Jones* v. *Ga. So. R. Co.,* 66 *Ga.* 558), and we construe the enactment to recognize this principle of nonliability on the part of the lessor company, with the proviso that where it has leased its road it must record the lease in order to avail itself of such nonliability. To construe the statute as contended for by learned counsel for plaintiff in error,—that is, that where a railroad company leases its road and records the lease under this act, it thereby absolves itself from liability for all negligence of the lessee to all persons,—would do violence to section 2228, which was codified in the Code of 1895 apparently from the decision in *Singleton* v. *Southwestern R. Co.,* 70 *Ga.* 464 (48 Am. St. R. 574). The act can not be construed as an express absolution to this defendant from its liabilities under its franchise. Repeals by implication are not favored by the law (*Griggs* v. *Macon,* 154 *Ga.* 519, 114 S. E. 899; *Savannah River Terminals Co.* v. *Southern Ry. Co.,* 148 *Ga.* 180, 33 S. E. 908; *Moore* v. *State,* 150 *Ga.* 679, 104 S. E. 907; *Southern Ry. Co.* v. *Melton,* 133 *Ga.* 277, 65 S. E. 665; *Sims* v. *State,* 7 *Ga. App.* 852, 68 S. E. 493; *Erwin* v. *Moore,* 15 *Ga.* 361; *Girardey* v. *Dougherty,* 18 *Ga.* 259; *W. & A. R. Co.* v. *Atlanta,* 113 *Ga.* 537, 38 S. E. 996, 54 L. R. A. 294); and "there must be a positive repugnancy between the provisions of the new law and those of the old." Wood *v.* U. S., 16 Pet. 342 (10 L. ed. 987); *Thornton* v. *State,* 5 *Ga. App.* 397 (63 S. E. 301); *Branch Bank* v. *Kirkpatrick,* 5 *Ga.* 34. Section 2599 provides that a failure to record the lease will authorize any person having a right of action, including any employee, to file and prosecute its claim against the lessor. Under the principle in

the *Killian* case, an employee of the lessee railroad could not sue the lessor for the negligence of a coemployee. Under the act referred to, a failure to record a lease would give to such employee the right to sue. The language used does not expressly so state and we are not prepared to say that the use of the expression "any person" in the act would mean that where such lease is recorded a member of the general public may not then bring his action against the lessor railroad company. The language appears to be surplusage. It would confer a right which had already been conferred by the statute as codified in § 2228. We are therefore of the opinion that the trial judge properly overruled the demurrer on this point.

■ The petition was attacked by general demurrer on the ground that it set forth no cause of action, the main ground of attack being that the facts pleaded in the petition, construed most strongly against the plaintiff, conclusively show that he was not himself in the exercise of ordinary care in the premises. It is a general rule, which has many times been announced and followed by both of our courts of review, that questions of diligence and negligence, including contributory negligence, are questions peculiarly for determination by the jury, and that courts can not as a matter of law determine these issues except in *plain and indisputable* cases. It is, on the other hand, axiomatic that where it is obvious from the facts pleaded in the petition (construed most strongly against the pleader) that the plaintiff by the exercise of ordinary care could have avoided the consequences of the defendant's negligence after it came into existence and was known to him or should have been discovered by the exercise of ordinary care, the plaintiff can not recover. See *Rome Ry. & Light Co.* v. *King*, 30 *Ga. App.* 231 (117 S. E. 464). Cases upon this question have been ably presented by both counsel for plaintiff and counsel for defendant, for which we acknowledge indebtedness. We are confidently of the opinion that the lower court properly overruled the general demurrer. The important facts alleged in the petition, which are to be taken as true on general demurrer, were that the plaintiff on the night of the injury was using a *public street crossing* at about 12:30 a. m., said crossing having eleven tracks of the Southwestern Railroad thereon, and said tracks being occupied and used by the Central of Georgia Railway Co.; that petitioner was on the north side of the street, which crossed the said tracks east and west, going east, and that on the

second track from the western side to the south of the crossing was a long string of gondola cars; that there was no switchman and no lights or watchman on the crossing, and the crossing was open and there was no sign of any moving train, and nothing to indicate that the defendant was shifting cars across said crossing; that petitioner, in the exercise of ordinary care, *looking both ways and listening for the approach of a train or cars, it being a dark night,* heard nothing and saw nothing that indicated that said crossing was being used or about to be used by the defendant at the time in shifting cars, and that he was struck down and run over by the southeast corner *of a box-car being pushed over the crossing.* It was further alleged that the cut of cars being *pushed* across said crossing was a cut of eighteen cars and an engine; that the engine was around a curve and was backing, *its headlight being thrown away from the crossing;* that said engine and cars *noiselessly approached said crossing* without any *bell being rung* and without any *warning being given* and without having any person stationed on the end of said cut of cars to signal the engineer or to warn anyone crossing said crossing. The petition alleged, as grounds of negligence, the failure of the defendant to have a watchman at said crossing; failure to sound a bell, blow a whistle or sound any warning of the approach of said cars; failure to have upon the end of said cut of cars an employee to warn the engineer in time to stop the speed of the cars and avoid injury to petitioner; failure to keep any lookout in approaching said crossing at a rate of speed greater than four miles per hour, in violation of an ordinance of the City of Albany, and failure to have any light on said cars to warn petitioner of danger. It appears that the plaintiff was the user of a public crossing. He was at a place where the railroad was bound to anticipate his presence and to exercise ordinary diligence to prevent inflicting injury upon him. He, on his own behalf, was bound to exercise ordinary care for his own safety. It has been held that it is not negligence per se for a person about to cross a railroad-track to fail to stop, look, and listen, but that one must use his senses in the way that an ordinarily prudent person would under similar circumstances use them in order to determine whether it would be safe to cross at that time and place.

"A railroad track is a place of danger, and one who goes thereon is bound to know that he is going into a place where he is subject

to the dangers incident to the operation of trains upon that track." It must appear that there was nothing present at the time and place of the injury "which would cause an ordinarily prudent person to reasonably apprehend the probability, even if not the possibility, of danger to him in doing an act which he is about to perform." *W. & A. R. Co.* v. *Ferguson,* 113 *Ga.* 708 (39 S. E. 306, 54 L. R. A. 802). The petition alleges that he did stop, look, and listen, but saw nothing and heard nothing. It is true that where a person, before attempting to cross a railroad-track, stops, looks, and listens, he is charged with notice of what he could have seen or heard (*Reed* v. *Southern Ry. Co.,* 37 *Ga. App.* 550, 140 S. E. 921; *Murphy* v. *Ga. Ry. &c. Co.,* 146 *Ga.* 297, 91 S. E. 108) ; but here the petition shows that it was a dark night and that the approaching cars had no light thereon; that the light of the locomotive was thrown away from the crossing; that such cars approached said crossing noiselessly, and for these reasons he was unable to ascertain the approach of the cars. These allegations, which do not seem to be inherently incredible or impossible, are not inconsistent with the other facts as pleaded in the petition, and, in determining the merits of a general demurrer, are to be taken as true. This court is not prepared to take judicial cognizance that a train, under the circumstances existing in this case, which is slowly pushing a cut of eighteen cars over a public crossing, makes so much noise as would necessarily warn a pedestrian of the approach of the cars. We are of the opinion that the trial judge correctly overruled the general demurrer. See, in support of this ruling, *Brown* v. *Savannah Electric & Power Co.,* 46 *Ga. App.* 393 (167 S. E. 773) ; *Seaboard Air-Line Ry. Co.* v. *Benton,* 43 *Ga. App.* 495 (159 S. E. 717) ; *Southern Ry. Co.* v. *Slaton,* 41 *Ga. App.* 759 (154 S. E. 718) ; *Mann* v. *Central of Georgia Ry. Co.,* 43 *Ga. App.* 708 (160 S. E. 131) ; *Faggart* v. *Rowe,* 33 *Ga. App.* 423 (126 S. E. 731) ; *Poole* v. *Central of Ga. Ry. Co.,* 23 *Ga. App.* 285 (97 S. E. 886) ; *Columbus Power Co.* v. *Puckett,* 24 *Ga. App.* 390 (100 S. E. 800) ; *Central of Ga. Ry. Co.* v. *Betsill,* 44 *Ga. App.* 219 (160 S. E. 663) ; *Clements* v. *Central of Ga. Ry. Co.,* 41 *Ga. App.* 310 (152 S. E. 849) ; *Buffington* v. *Atlanta, Birmingham & Coast R. Co.,* 47 *Ga. App.* 85 (169 S. E. 756).

Counsel for plaintiff in error contends that there are two lines of cases in Georgia upon this subject "as distinct and well defined as the waters of the Gulf stream from the ocean into which it flows,"

and that this case falls within the principle announced in *Peeples* v. *L. & N. R. Co.*, 37 *Ga. App.* 87 (139 S. E. 85), *Cox* v. *Central of Ga. Ry. Co.*, 38 *Ga. App.* 88 (143 S. E. 444), and *Leverett* v. *L. & N. R. Co.*, 38 *Ga. App.* 155 (142 S. E. 905). In the *Peeples* case it is apparent that the plaintiff took *no precaution* in going upon the track, but stepped in front of a fast-moving train, which, *if he had looked, he could have easily seen.* There the plaintiff put himself in a position where he could not possibly protect himself and where the railroad company could not protect him from his own negligence in stepping out from behind a passing train onto the track upon which the train that struck him was approaching. The *Cox* case and the *Leverett* case, also cited by counsel, are clearly distinguishable from the case at bar; as is also the recent case of *Coleman* v. *W. & A. R. Co.*, 48 *Ga. App.* 343 (172 S. E. 579). In that case the plaintiff deliberately placed himself in a place of peril, where neither he nor the railroad company could protect him. *No reason was shown* why he should not have ascertained the approaching train except that there were some standing box-cars which obscured the view in approaching the crossing, *but,* as pointed out by the court, *these cars had already been passed* by the defendant and they *played no part* in his failure to discover the approaching train. As pointed out by the court in the motion for rehearing: "There was nothing in the petition to show why the plaintiff could not have seen the incoming train approaching from the north, before stepping onto the track on which it was approaching, had he looked."

■ In the motion for a new trial the plaintiff in error, in numerous grounds, takes exceptions to various excerpts from the charge of the court, not that they are themselves erroneous, but that they deprived the defendant of one of its main defenses, that is, that stated in section 4426 of the Civil Code. It is apparent that these excerpts, when construed in the light of the charge as a whole, could not have misled the jury in the respect stated. The charge of a trial judge has for its purpose to inform the jury as to the substantial law upon the issues involved in the case. When this has been done, and no error has been committed in the statement of the law, errors of the nature here alleged should be cautiously scanned. They should be taken in the light of the whole charge; and unless it is plain that they have worked injury to one of the parties and

have confused the jury as to the law governing the actions of the parties, such excerpts should not be considered erroneous. The charge of a trial judge .is subjected to microscopic, meditative, skilled, and purposeful scrutiny by those learned in the law, who may always, except in isolated instances, subject some fragmentary part of it to seemingly just criticism. Thus it is held that if, when the part is placed with the whole, it gives the mind a clear picture of the law applicable, so that the jury could not have reasonably been misled or confused, it is not to be considered as erroneous. "A reviewing court will look to the *nature of the case, and the charge as a whole* [italics ours], to ascertain whether the jury has been misled, or whether it is likely that the contentions of the parties have been misunderstood or lost sight of." *Livingston* v. *Taylor,* 132 *Ga.* 1, 4 (63 S. E. 694); *Prescott* v. *Fletcher,* 133 *Ga.* 404 (65 S. E. 877); *Suple* v. *State,* 133 *Ga.* 601 (66 S. E. 919). In *Brown* v. *Matthews,* 79 *Ga.* 1 (4 S. E. 13), Bleckley, C. J., said: "A charge, torn to pieces and scattered in disjointed fragments, may seem objectionable, although when put together and considered as a whole it may be perfectly sound. The full charge being in the record, what it lacks when divided is supplied when all the parts are united. United they stand, divided they fall."

From a review of the charge of the court it appears that the trial judge specifically stated to the jury that the defendant contended that the plaintiff did not exercise the slightest degree of care and caution in going upon said track, that he had warning and notice of the train by the noise of its movement in switching, and that through the exercise of his senses of sight and hearing he could have stopped short of the track and avoided the injury. It appears that the judge in his charge to the jury stated the several acts of negligence alleged in the petition and instructed them that if the defendants were negligent in one or more of the ways set out and that such negligence was the proximate cause of the plaintiff's injuries, "and that the plaintiff, in the exercise of ordinary care, could not have avoided the negligence of the defendants, then and in that event .. . [the jury] would be authorized to find for the plaintiff in this case." It appears further that the trial judge read to the jury section 4426 of the Civil Code and fully explained to them that if the plaintiff could, by the exercise of ordinary care, have avoided the consequences of defendant's negligence, he could not

recover. The charge as a whole is an unusually full and fair statement of the law applicable to the case. Each defense made was presented in detail and with particularity. The law applicable to the general denial of the defendant, as well as the special defenses, is fully covered. We are therefore of the opinion that these grounds are without merit.

The petition was supported in the main by sufficient evidence, and, the verdict having the approval of the trial judge and no error of law being shown, we are without authority to interfere with it.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*

ON MOTION FOR REHEARING.

GUERRY, J. It is insisted by counsel for the plaintiff in error that this court erred in its original opinion in holding that the trial court did not err in overruling certain special grounds of demurrer to the plaintiff's petition. As shown by the facts set out in the original opinion, the plaintiff was injured by the operation of a cut of eighteen box-cars being backed across a public crossing. It is insisted that since the plaintiff's petition alleged that "It was a dark night and so dark that petitioner, although listening and looking carefully, could not see nor hear the engine and cut of cars before nor after the accident; . . that attached to the engine were approximately eighteen box-cars, and that by reason of the length of said string of cars the engine pushing said cars backwards toward said crossing was around and beyond a curve in the track to the north of said crossing; . . that your petitioner was walking to his work at the G. S. W. & G. R. Co. shops located at the eastern end of Society Street in the City of Albany," that the alleged grounds of negligence, to wit: "13 (1) In that defendants did not have stationed at the crossing a watchman to warn your petitioner that the said defendants were at that time switching cars across said crossing. 13 (3) In that defendants were negligent in failing to have upon the lead end of said cut of cars an employee who could have warned the engineer of petitioner's dangerous position in time to stop the cars or slacken the speed thereof and avoid the injury to petitioner. 13 (5) In that defendants failed to keep any lookout ahead as said crossing was approached," could not have been the proximate cause of the plaintiff's injuries, and that therefore the special grounds of demurrer pointing out this defect should have have been sustained. In other words, it is contended

that inasmuch as the petition shows that the night was dark and because of such darkness plaintiff could not see the approach of the cut of cars, an employee riding upon such cut of cars could not have seen the plaintiff, and that the absence of such employee could not have in any way contributed to the plaintiff's injury; this contention being based on the principle of law that negligence, to be the basis of a recovery, must be the proximate cause of the injury, and if the injury would have occurred regardless of the alleged negligent act, there can be no recovery.

The case of *Western & Atlantic R.* v. *Crawford,* 47 *Ga. App.* 591 (170 S. E. 824), is cited to us as controlling in favor of the contention of plaintiff in error. In that case it was held that because the plaintiff's petition disclosed by its allegations that it was impossible for the plaintiff, "on account of a deep cut immediately north of said crossing, to see the approach of the train (traveling from the north) until it was within five or six feet of the crossing," that, "for the same reason, it would be impossible for the defendant's servants to see the approach of the plaintiff, who was traveling from the west," and that therefore the ground of alleged negligence that "the engineer operating the locomotive engine, while approaching said crossing, failed to keep and maintain a constant and vigilant lookout along the tracks ahead of said engine," should have been stricken on special demurrer, for the reason that such failure could not have contributed to the injury. It was further stated by the court in that case that "This decision does not hold as a matter of law that because the defendant could not see the engineer, the engineer could not see the defendant, but holds that the facts pleaded make it impossible for the engineer to see the plaintiff. . . We can conceive of conditions where the plaintiff could not see the engineer and yet the engineer could see the plaintiff." In *Western & Atlantic R.* v. *Leslie,* 48 *Ga. App.* 714 (172 S. E. 236), where it was alleged in the petition that on account of the night and a thick, heavy, murky, dense fog, it was impossible to see more than five or six feet, and where the *Crawford* case was cited and discussed, Jenkins, P. J., said: "A jury might find that, upon approaching a crossing under such extraordinary fog conditions as those here set forth by the petition, the duty imposed by the statute upon the operatives of a locomotive to 'otherwise' exercise due care to avoid an injury might require bringing

the train to a stop or as near a stop as might be necessary to enable the engineer maintaining the lookout prescribed by law to take steps to avoid a collision with persons or objects on the crossing after they had first become visible from a distance of five or six feet. . . " That case is also cited to us as authority for the position of plaintiff in error. However, upon close analysis, it will be seen, from the reasoning used by Judge Jenkins, that it supports a contrary view. There, as pointed out by Judge Jenkins, the petition admitted that a speed of four miles an hour constituted a cautious and proper speed and that it was manifest that nothing could have been done to stop a train moving at such admitted proper speed within five or six feet. In both the *Crawford* case and the *Leslie* case it will be noted that the injury was caused by a locomotive, in the latter case with a headlight burning. Can it be said that when physical conditions obtrude themselves that fact will absolve a railroad company from all duty toward travelers, on the ground that a violation of such a duty might not be the proximate cause of the injury, in view of the express provision of the statute which requires that such an engineer operating an engine should "otherwise exercise due care in approaching said crossing in order to avoid doing injury to any person or property which may be on such crossing, or upon the line of said railway at any point within fifty feet of such crossing?" Civil Code (1910), § 2677 (2). Does the fact that a crossing is blind absolve a railroad company from the duty of maintaining a lookout, or the fact that the night is dark and foggy permit the operation of a train without a headlight? Would it be possible that because a night is dark and thick with fog a railroad company might say: "I need maintain no lookout, for I can not see; burn no headlight, and have no regard to speed regulations at crossings, because such violations of even statutory duties can not be considered the cause of an injury?" We can not believe that any such ruling should be the law.

An act of negligence may not by and of itself be the proximate cause of an injury, and yet it may be a contributing cause thereof. The failure of the railroad company to maintain a lookout on the end of the cut of cars to signal the engineer in the event of an emergency may not have been the sole proximate cause of the injury where the night is so dark that such a lookout does not enable one to see a person on the track, and yet the failure to have or main-

tain such a lookout with a light is a circumstance to be considered by a jury in determining the questions of negligence and care used in approaching such crossing. If the engine was around a curve and it was impossible for the engineer to see the crossing, because of this fact and the further fact that he knew that the cars he was pushing would cross the crossing long before his engine, due care might have required that there be stationed on the front car a watchman; and if it were not possible for him to see whether any one was using the crossing because of the darkness of the night, due care under such circumstances might have required that he stop the train until he could ascertain this fact. A contrary holding would be to say that if the night is dark and visibility impossible, the engineer need not keep a lookout, and in case of injury such a failure would not constitute negligence and could not be pleaded, and therefore could not be proved. Under the pleadings in this case it is shown that the defendant, although the night was dark, was operating a train of cars across a public crossing at an unlawful rate of speed, without having a light thereon and without having a lookout of any kind. It is contended by demurrer that because of the fact that the night was dark, no duty rested on the defendant to keep such a lookout, for the reason that it would have been ineffective. We are unable to agree that because of such reason such a circumstance may not be considered by the jury as a contributing cause of the injury. The allegations of negligence are in no way absurd or unreasonable, as stated in the case of *Atlantic Coast Line R. Co.* v. *Moore,* 8 *Ga. App.* .192, supra. They are not so disassociated with the other alleged acts of negligence as to make it immaterial and irrelevant, and we are still of the opinion that the demurrers to the grounds of negligence already set out were properly overruled by the trial court.

It is further insisted that because of the allegations in the petition that the night was so dark that the plaintiff-could not see, these circumstances show that plaintiff could not recover. In other words, it is contended that where one approaches a railroad-track, a place of known danger, when he can not see, to cross it is such a lack of ordinary care as would as a matter of law preclude a recovery by him in a suit against the railroad company for injuries caused by the running of a train. We can not agree that such a contention is sound. The Supreme Court of the United States in a recent de-

cision, Pekora v. Wabash Ry. Co., 292 U. S. 98 (54 Sup. Ct. 580, 78 L. ed. 1149, 91 A. L. R. 1049), written by Justice Cardoza, said . "In such circumstances the question, we think, was for the jury whether reasonable caution forbade his going forward in reliance on the sense of hearing, unaided by that of sight. No doubt it was his duty to look along the track from his seat, if looking would avail to warn him of his danger. This does not mean, however, that if vision was cut off by obstacles, there was negligence in going on, any more than there would be negligence in trusting to his ears if vision had been cut off by the darkness of the night." The plaintiff alleged that he both looked and listened and heard nothing and saw nothing. The court further said in the Pekora case: "Pekora made his crossing in the daytime, but, like the traveler by night, he used the faculties available to one in his position. . . All this the plaintiff, like any other traveler, might fairly take into account. . . Standards of prudent conduct are declared at times by the courts, but they are taken over from the facts of life. . . Extraordinary situations may not wisely or fairly be subjected to tests or regulations that are fitting for the commonplace or normal. In default of the guide of customary conduct, what is suitable for the traveler caught in a mesh where the ordinary safeguards fail him is for the judgment of the jury." As was suggested by Judge Jenkins in the Leslie case, proper care may have required those in control of the cut of cars on this occasion in default of having a light on the end of the lead box-car backing over the crossing, to have had some person going ahead who could have signalled the engineer in charge that the way was clear. The facts pleaded do not show that such conduct would have been unavailing, and in its last analysis what would have constituted ordinary care or a lack thereof was a question for the jury.

*Rehearing denied.*

MacINTYRE, J. . The case of *Western & Atlantic Railroad* v. *Crawford* supra, does not raise the question as to whether the proper number of employees of the defendant were on duty, or as to whether they were properly stationed, or as to whether the train or the employees were properly equipped, or whether the train itself should have had a light either on the train or in the hands of its employees (the occurrence in the *Crawford* case was in the daytime), or as to whether a watchman properly placed and equipped

could have seen the approach of the plaintiff. The decision in the *Crawford* case inferentially says that the employees were proper in number and properly equipped, and properly stationed, and the train was properly equipped (nothing to the contrary having been alleged in the petition), and that there was an embankment through which no human eyes could possibly see, and that under the facts alleged, it was impossible for the engineer to see through the embankment and see the plaintiff. Therefore, under the allegations in the petition, no matter how diligent the engineer might have been, he could not have seen the approach of the plaintiff, and the injury would have occurred regardless of whether the engineer was keeping a proper lookout or not.

In the instant case, under the allegations of the petition, if the train had been properly equipped and its employees had been properly stationed and equipped, it can not be said, as a matter of law, that the injury would have occurred regardless of the negligent acts of the company or its employees. In ground of negligence 13 (5) it is not alleged that the engineer at a distance of eighteen cars away around the curve failed to keep a lookout; but, on the contrary, it is alleged that the defendant failed to keep *any* lookout, and it is in effect alleged that a lookout properly stationed and equipped could have avoided the injury.