35613.  THE GREYHOUND CORPORATION *v.* STOKES *et al.*
35614.  BALES *v.* STOKES *et al.*

DECIDED MARCH 17, 1955.

A. *Walton Nall, Nall, Sterne, Miller, Cadenhead & Dennis,*
*Henry Fullbright, Jr.*, for Greyhound Corp. *et al.*
*Clower & Anderson, E. J. Clower,* contra.

TOWNSEND, J. ■ It is first contended by the defendant Bales that he owed no duty to the plaintiff, after the regular business hours of the establishment, except to avoid inflicting a wilful or wanton injury upon her; and that she was a mere licensee, and not an invitee, upon the premises. The allegations of the petition do not bear out this contention, but, rather, it appears that the defendant operated a place in which people might wait for the arrival of Greyhound buses in order to become passengers thereon; that the station was open, although no business was being transacted there at the time; that the plaintiff was a prospective passenger; and that she did wait for a bus there, and it did arrive on schedule. The plaintiff thus put the bus depot to the use for which it was intended by both defendants, under the facts alleged. "The use by a railroad company of a building for a freight and passenger depot is an implied invitation to any one who may have business with the company in its capacity as a carrier of freight or a carrier of passengers. 'When the owner or occupier of land, by invitation express or implied, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries occasioned by the unsafe condition of the land or its approaches, and, under such an express or implied invitation, he must exercise ordinary care and prudence to render the premises reasonably safe for the visit.' *Atlanta Oil Mills* v. *Coffey,* 80 *Ga.* 145 (2); Civil Code § 3824 [Code § 105-401 of 1933]. The liability of a railroad company as the owner or occupier of land engaged in business, is the same as that of any person in like circumstances. *Central Railroad* v. *Gleason,* 72 *Ga.* 742." *Central Ry. Co.* v. *Hunter,* 128 *Ga.* 600 (58 S. E. 154). See also, as to the liability of carriers for injury to prospective passengers, 7 A. L. R. 2d 549, 564, § 7. That the defendant Bales, as agent and lessee of the owner, left the bus depot opened, and the doorway to the loading platform and area where the bus had to be entered accessible to members of the public waiting to board the bus, constituted an implied invitation

to continue the use of the facilities, although it was after regular business hours and there was no employee actually engaged in selling tickets. This ground of demurrer is without merit.

■ It is further contended by the defendant The Greyhound Corporation that it has no liability to the plaintiff because, since she had not yet purchased a ticket, she had entered into no contractual relation with it, and because the allegations of the petition that The Greyhound Corporation operated the bus depot "by and through its lessees and agents," construed against the pleader, amount to the allegation that the plaintiff was injured because of the negligence of Bales, a lessee and independent contractor, for which the motor carrier is not liable. A carrier must exercise ordinary care in providing safe and adequate approaches to its vehicles. 13 C. J. S. 1328, § 714 et seq. This applies equally to motor buses as to other means of transportation. Calhoon v. Pittsburgh Coal Co., 128 Pa. Super. 582 (194 Atl. 768, 722). It is necessarily essential to motor transportation that there be facilities where passengers can board or leave buses; and where, in order to provide such facilities, the motor carrier placed or used on land belonging to it a structure designated "Greyhound Bus Depot of Rome" in connection with its passenger traffic, the fact that the operation of such depot for this purpose was handled by a lessee in no manner exempts the bus company from its duty owing to the public in connection with the facilities; in other words, having undertaken to set up a bus depot for the convenience of itself and its passengers, it cannot, by a lease agreement, insulate itself from liability in connection with the operation thereof. Code § 22-716 provides as follows: "A corporation charged with a duty to the public cannot, by sale or otherwise, dispose of its property or franchises so as to relieve itself from liability for acts done or omitted, without legislative sanction expressly exempting it from liability." See also *Green* v. *Coast Line Ry. Co.*, 97 *Ga.* 15, 27 (24 S. E. 814, 33 L. R. A. 806, 54 Am. St. R. 379); *Central of Ga. R. Co.* v. *Leonard*, 49 *Ga. App.* 689 (1) (176 S. E. 137); *Southwestern R. Co.* v. *Davies*, 53 *Ga. App.* 712 (1) (186 S. E. 899). It is true that these cases deal with railroad companies, and the actual operation of trains—which is the subject matter of their franchise—in a negligent manner. But it is equally true that any carrier must, in order to carry on

its occupation, arrange for the taking on and discharging of passengers—or, as here, a person who has the intention of becoming a passenger—and where, as here, it takes on this obligation to the public by means of a depot provided by itself for that purpose, it cannot by lease "otherwise dispose of its property" so as to relieve itself from "liability for acts done or omitted." The depot was alleged to have been operated by the defendant in its own name, through a lessee, on property owned by it. It would, accordingly, be liable equally with Bales for injury resulting from failure to provide a reasonably safe place, consonant with ordinary care and diligence, for invitees coming on the premises for the purpose of doing business with it.

■ It is contended by both defendants that the plaintiff's petition shows on its face that she is barred from recovery through failure to exercise ordinary care. The petition alleges: "The station was darkened and no lights were burning outside the bus depot and on the walkway or passenger platform, and said light [inside the station, was] insufficient to light up the outside walkway and passenger platform . . . which was unpainted and raised to an elevation of approximately 5 inches from the surface of the driveway where the buses come in for loading and unloading passengers, and said walkway runs the full length of said bus depot on the south side of same. The driveway for the buses and the passenger platform are both of the same color and composition, being constructed of unpainted concrete, and there are and were no railings, signs, markers, or other things designating a step-up and . . . plaintiff could not and did not, in the exercise of reasonable care and diligence, see that there was any step-down as above described. . . Due to the dim lights showing only through the windows of said bus depot, the driveway and the platform were indistinguishable and created the optical illusion that the surface of the passenger platform and concrete walkway was on and of the same level as the driveway." It is further alleged that the lights of the bus were off, and that, as plaintiff stepped off the surface of the passenger platform, she lost her balance and fell violently, striking the concrete driveway.

In *Pilgreen* v. *Hanson*, 89 *Ga. App.* 703, 709 (81 S. E. 2d 18), an action for damages resulting from a fall because of the difference in floor heights of two connecting dimly lit rooms, this court

held: "The gist of the cause of action here is that because of an optical illusion, created by the manner in which the tile was laid by the defendant and the dimness of the light in the restaurant, the irregularity in the surface of the floor and the highly polished condition of the floor were not visible and obvious. This state of her pleadings at once distinguished the plaintiff's case from that line of cases wherein the question of visibility was not involved and the defect or dangerous condition of the premises would have been plainly visible to the plaintiff if she had looked where she was going. She alleges that she had no knowledge of the difference in the floor levels and the highly polished condition of the floor; and in the absence of such knowledge, we cannot say as a matter of law that she was so negligent as to bar her recovery in entering the semi-darkened restaurant. . . The plaintiff here, as an invitee, is not required to negative her failure to exercise ordinary care for her own safety, and it does not affirmatively appear from the allegations of the petition that she did fail to exercise ordinary care for her own safety as a matter of law." See also *Boyd* v. *Gardner,* 62 *Ga. App.* 662 (9 S. E. 2d 202); *Tybee Amusement Co.* v. *Odum,* 51 *Ga. App.* 1 (179 S. E. 415); *Mathis* v. *Gazan,* 51 *Ga. App.* 805, 808 (181 S. E. 503). The cases cited by the plaintiff in error are to be distinguished, either as master-servant cases, where it is necessary for the servant to show affirmatively that his opportunity for knowledge was not equal to that of the master, or that he did not assume the risk (see *Holman* v. *American Automobile Ins. Co.,* 201 *Ga.* 454, 39 S. E. 2d 850); or because the petition affirmatively showed that the plaintiff was as aware of the obstruction as the defendant (*Rogers* v. *Atlanta Enterprises, 89 Ga. App.* 903, 81 S. E. 2d 721); or, as in *Hopkins* v. *Barron,* 61 *Ga. App.* 168 (6 S. E. 2d 96), where the injured plaintiff was the person in charge of the premises; or, as in *Bridger* v. *Gresham,* 111 *Ga.* 814 (35 S. E. 677), where the plaintiff, by closing the door behind himself, shut out the light by which he might have seen the stairway on which he fell. The allegations of the petition here show affirmatively that the plaintiff was from another city, and she arrived at the bus station after dark; that the station-platform lights were not turned on; and that, in the darkened areaway, the platform and driveway created the optical

illusion of being level. Accordingly, it does not affirmatively appear that the plaintiff failed to exercise ordinary care for her own safety.

The special demurrers, not being insisted upon, are treated as abandoned.

The trial court did not err in overruling the demurrers to the petition.

*Judgment affirmed in both cases. Gardner, P. J., and Carlisle, J., concur.*